**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Tallice ANDREWS and Thurston Brooks,
Defendants-Appellees.**

No. 78–5166.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1978.

Decided Dec. 14, 1979.

As amended Feb. 15, 1980.

236

James K. Robinson, U. S. Atty., Detroit, Mich., for plaintiff-appellant.

John W. Tapp, Asst. Federal Public Defender, Detroit, Mich., for Brooks.

William L. Woodard, Richard R. Nelson, Detroit, Mich., for Andrews.

Before KEITH and MERRITT, Circuit Judges, and GREEN,* Senior District Judge.

* Honorable Ben C. Green, Senior District Judge, for the Northern District of Ohio, sitting by designation.

BEN C. GREEN, Senior District Judge.

In this action we are called upon to consider the question of "prosecutorial vindictiveness" under the principles enunciated by the Supreme Court in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

On November 16, 1975 defendants Tallice Andrews and Thurston Brooks were stopped and arrested at the Detroit Metropolitan Airport.[1] Also stopped and arrested with defendants was one Fannie Braswell. On November 8, 1976 all three individuals were jointly indicted for narcotics and firearms offenses under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(b) respectively.

On December 29, 1976 defendants Andrews and Brooks were arraigned before a United States Magistrate and were remanded without bail as requested by government motion. They appealed that ruling to the District Court, and on January 11, 1977 both defendants were admitted to bail.[2]

On January 13, 1977 the Grand Jury returned a superseding indictment charging the three defendants (Andrews, Brooks and Braswell) with an additional conspiracy count pursuant to 21 U.S.C. § 846, alleging a conspiracy to violate 21 U.S.C. § 841(a)(1). The conspiracy alleged covered the period of November 15–16, 1976, and incorporated the substantive count offense of possessing heroin with intent to distribute as the crime intended to be committed.

Defendants Andrews and Brooks thereafter moved to dismiss the superseding indictment. They contended that the indictment was procured in retaliation for their exercising the constitutionally protected right to seek bail, and as such was the product of prosecutorial vindictiveness prohibited under *Pearce-Blackledge*. The District Judge granted the motion and dismissed the conspiracy count. *United States v. Andrews*, 444 F.Supp. 1238 (E.D.Mich., 1978).

In his opinion the District Judge held that "Due process of law requires that *even the appearance of vindictiveness* must be absent from judicial proceedings." (emphasis added). *Id.*, p. 1239. In construing *Pearce* and *Blackledge* he further held:

> Courts have interpreted this language to mean that in the context of a colorable claim of prosecutorial vindictiveness the prosecutor must justify his or her actions in the same manner as would a judge under *Pearce* by some fact or event, unrelated to the defendant's exercise of his rights, of which the prosecutor learns *after* the initial charge. *U. S. v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976); *U. S. v. Jamison*, 164 U.S.App.D.C. 300, 505 F.2d 407 (1974); *U. S. v. Gerard*, 491 F.2d 1300 (9th Cir. 1974). *Sefcheck v. Brewer*, 301 F.Supp. 793 (S.D.Iowa 1969). Consistent with *Pearce* and *Blackledge*, these courts' inquiries have not been directed at whether actual retaliation was shown, but whether the *appearance* of vindictiveness exists. see also *U. S. v. Johnson*, 537 F.2d 1170 (4th Cir. 1976). As a corollary of these holdings, the justification for the increased charge must dispel the *appearance*, not the actuality, of vindictiveness. *Id.*, p. 1240 (emphasis as in original).

It appears from the District Judge's opinion that the prosecution explained the circumstances of obtaining the superseding indictment:

> . . . by pointing out that the prosecutor in this case was inexperienced and

---

1. A defense challenge to the legality of that stop and search is the subject of a separate opinion of this court. *United States v. Andrews*, 600 F.2d 563 (6th Cir. 1979).

2. While it does not appear from the record or from the opinion of the District Judge, in argument to this Court both sides appear to agree that the government's request that the defendants be held without bail was predicated upon representations to the Magistrate and District Judge that Fannie Braswell had turned state's evidence, had been threatened, and had been placed in the federal witness protection program. The government's opposition to the defendants' ultimately successful attempt to be released on bail has been characterized as "vigorous."

did not realize that she should or could have sought a conspiracy' indictment. This, in combination with a moratorium on the work of the Grand Jury in this District, due to challenges to the validity of the composition of those juries, and vacation schedules in the prosecutor's office, it is argued, prevented the presentation of testimony concerning a conspiracy to the Grand Jury until two days after the defendants' bond motion was decided. Government counsel has represented that but for the moratorium and scheduling difficulties she would have presented the conspiracy evidence to the Grand Jury in mid-December, prior to the time defendants filed their bond motion.[3] *Id.*, p. 1241.

It is not clear from the District Judge's opinion whether he credited such testimony,[4] in that he found the reasons given to be legally insufficient, holding:

> That the government failed to charge a conspiracy prior to defendants' assertion of the right to bail because of inexperience, mistake and difficulties with Grand Jury scheduling does not alter the fact that the increased charge "appears vindictive." If left uncorrected, such action would undoubtedly chill the assertion of Constitutional rights. *Id.*, p. 1243.

In making such determination the District Judge expressed the view that the only factors which would sustain a superseding indictment under the facts of this action were changed circumstances or newly discovered evidence, without fault on the part of the government. *Id.*, pp. 1241, 1244.

The District Judge's overall approach to this question of prosecutorial vindictiveness is exemplified by the following from the concluding portions of his opinion.

> The cases previously cited demonstrate the systemic concerns involved in any motion to dismiss an indictment for prosecu-

torial vindictiveness. The Court is called upon in a motion such as this to determine whether the actions of the prosecutor are likely to engender a chilling effect on the exercise of Constitutional or statutory rights. Where, as here, there is *an appearance of retaliatory vindictiveness* the law imposes a heavy burden on the prosecution to justify its conduct in a manner that not only removes doubt as to actual vindictiveness, but puts at rest fears that the exercise of important rights will be deterred. The justification offered by the government here fails to provide a "neutral explanation" apparent from the record which satisfies the requisite test. *U. S. v. Sturgill*, [563 F.2d 307 (6th Cir. 1977)] supra, at 309. *Id.*, p. 1244 (emphasis added).

■ We believe that the District Judge's interpretation of *Pearce* and *Blackledge* is too narrow, and do not find in those decisions support for the proposition that "appearance of vindictiveness" is a proper standard against which prosecutorial conduct is to be measured. Accordingly, the decision below must be vacated.

*North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), involved the question of an increased penalty upon resentencing. In that action the defendant appealed his original conviction, obtained a reversal, was retried and again convicted, and sentenced more severely upon the second conviction. The Supreme Court held that due process prohibits actual vindictiveness in resentencing and "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.*, p. 725, 89 S.Ct., p. 2080. Further holding that "In order to

---

3. Again while it does not appear from the record, it was represented at oral argument before this court by the government counsel involved in the District Court proceedings that the error in failing to include the conspiracy count was noted by the supervising attorney for the prosecutor involved.

4. The District Judge did state that "the Court does not find that the action of the prosecutor was malicious, nor does it question her integrity." *Id.*, p. 1243.

assure the absence of [retaliatory] motivation, we have concluded that whenever a judge imposes a more severe sentence upon a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," *id.*, p. 726, 89 S.Ct., p. 2081 and failing to find any such justification in the record, the Supreme Court ordered vacation of the second sentence.

The rationale of *Pearce* was extended to prosecutorial conduct in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In *Blackledge* the defendant was convicted in state court on a misdemeanor assault charge. When he exercised a statutorily granted right to demand trial *de novo* on appeal, the prosecutor obtained a felony assault indictment based upon the same conduct. Upon review before the Supreme Court it was held that the prosecution's unexplained "upping the ante", *id.*, p. 28, 94 S.Ct. 2098 violated the defendant's due process rights, even in the absence of any evidence that the prosecutor acted in bad faith or maliciously. Returning to the holding in *Pearce*, the court reiterated that since the fear of vindictiveness may deter the exercise of constitutional rights a defendant is entitled to be free of apprehension of retaliatory motivation on the part of state authorities in response to the exercise of such rights and that "Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process." *Ibid.*

In the course of the *Blackledge* opinion the court reviewed its holdings in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1973) and *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1972), each of which involved unsuccessful attempts by a defendant to have a greater sentence upon a second trial set aside under the decision of *Pearce*. In distinguishing those decisions the court observed that in *Colten* sentence was imposed by a different judge so that there was little possibility that "personal vindictiveness" was involved, while in *Chaffin* trial was to a jury which was unaware of the earlier proceeding so that the danger of vindictiveness was *de minimis*. *Blackledge v. Perry, supra*, 417 U.S. pp. 26–27, 94 S.Ct. 2098. In *Colten* the Supreme Court had spoken of due process being violated· if an increased sentence was imposed *"as purposeful punishment"*, 407 U.S. 104, 116, 92 S.Ct. 1953, 32 L.Ed.2d 584, while.in *Chaffin* the concept that a jury was highly unlikely to *penalize* a defendant for exercising a right of appeal was emphasized. 412 U.S. 17, 26, 93 S.Ct. 1977, 36 L.Ed.2d 714. In *Chaffin* the argument that the mere imposition of a harsher sentence would have a "chilling effect" on the future exercise of constitutional rights was rejected. 412 U.S. 17, 29–35, 93 S.Ct. 1977, 36 L.Ed.2d 714.

In our opinion, the foregoing decisions are not supportive of the concept of "appearance of vindictiveness" being an appropriate standard to be applied in this case, nor do they require imposition of the limited exceptions to the *Pearce-Blackledge* rule recognized by the District Court. We cannot equate the Supreme Court's language in *Pearce* and *Blackledge* concerning apprehension of a realistic likelihood of vindictiveness with a rule turning on "appearance of vindictiveness", particularly in light of the references in *Colten* and *Chaffin* to due process violations by purposeful punishment or penalization of a defendant in retaliation for the exercise of constitutional rights.

While our conclusion in this regard is drawn primarily from the face of the *Pearce* and *Blackledge* rulings, it is reinforced by the Supreme Court's latest examination of those authorities in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

In *Bordenkircher* the court had under review this court's decision in *Hayes v. Cowan*, 547 F.2d 42 (6th Cir. 1978), granting a writ of habeas corpus by reason of prosecutorial vindictiveness in obtaining a superseding indictment. The defendant therein had been charged in a one-count indictment with forgery. He had been ad-

vised, promised, warned, or threatened by the prosecution (depending on what coloration one chooses to apply to the facts) that if he "did not intend to save the court the inconvenience and necessity of a trial and taking up this time" by pleading guilty with a prosecution recommendation for a five-year sentence he would also be charged as an habitual offender and face a possible life sentence. 547 F.2d 42, 43. He refused to plead to the forgery indictment, the prosecution obtained a second indictment adding the habitual offender charge, and the defendant was convicted on both counts.

The Supreme Court reversed the grant of habeas corpus, ruling that an increase in charges as a part of the "give-and-take" of plea bargaining contained no element of punishment or retaliation, that there was a "mutuality of advantage" available to each of the parties regarding avoidance of trial, and that because the defendant was free to accept or reject the prosecution's offer the conduct of the prosecutor in adding the more serious charge could not be considered as vindictive. *Bordenkircher v. Hayes, supra,* 434 U.S. at p. 363, 98 S.Ct. 663. While this is the pivotal point of *Bordenkircher,* and thus plainly distinguishes that action on its facts, we do not believe that we can ignore the Supreme Court's approach to *Pearce* and *Blackledge* therein by reason of that circumstance (as we have been urged to do by appellees).

In the course of the *Bordenkircher* opinion the Supreme Court stated:

This Court held in *North Carolina v. Pearce,* 395 U.S. 711, 725 [, 89 S.Ct. 2072, 23 L.Ed.2d 656], that the Due Process Clause of the Fourteenth Amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." The same principle was later applied to prohibit a prosecutor from reindicting a convicted misdemeanant on a felony charge after the defendant had invoked an appellate remedy, since in this situation there was also a "realistic likelihood of 'vindictiveness.'" *Blackledge v.*

*Perry,* 417 U.S., at 27 [94 S.Ct. 2098]. *Id.,* p. 362, 98 S.Ct., p. 667.

The Court further spoke of *Pearce* and *Blackledge* as representing the "imposition of penalty" upon a defendant, *ibid.,* and stated:

The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, see *Colten v. Kentucky,* 407 U.S. 104 [, 92 S.Ct. 1953, 32 L.Ed.2d 584]; *Chaffin v. Stynchcombe,* 412 U.S. 17 [, 93 S.Ct. 1977, 36 L.Ed.2d 714], but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. See *Blackledge v. Perry,* supra, [417 U.S.] at 26–28 [, 94 S.Ct., at 2101–02]. *Id.,* p. 363, 98 S.Ct., at p. 667.

We believe it to be noteworthy that in its references to and quotation from *Pearce* and *Blackledge* the majority in *Bordenkircher* did not refer to the broader aspects of those earlier rulings regarding the defendant's perception of the conduct in question—"apprehension of vindictiveness".

Justice Blackmun, writing for a three-member dissent, stated that the majority opinion "is departing from, or at least restricting, the principles established in *North Carolina v. Pearce,* 395 U.S. 711 [, 89 S.Ct. 2072, 23 L.Ed.2d 656] (1969) and in *Blackledge v. Perry,* 417 U.S. 21 [, 94 S.Ct. 2098, 40 L.Ed.2d 628] (1974)." *Id.,* pp. 365, 366, 98 S.Ct., p. 669. We believe that any such restriction is merely to the limits that *Pearce* and *Blackledge* were intended to occupy and beyond which they have been taken in many instances by the lower courts, and that the *Bordenkircher* interpretation of *Pearce* and *Blackledge* is a clear indication to the trial courts that the doctrine developed in those rulings is to be confined to its intended scope.

There is a significant distinction between the facts of this case and those of *Pearce* and *Blackledge.* In *Pearce* and *Blackledge* there was a substitution of charges—the same conduct on the part of the defendant was the basis for the diverse sentences im-

posed in *Pearce* and underlie both the misdemeanor and felony charges in *Blackledge*. In this case the same conduct is not the basis for both the original indictment charging the substantive offenses and the superseding indictment adding the conspiracy count. The conspiracy charge, although arising from the same total factual pattern from which the substantive counts arise, is a separate and distinct offense with elements different from those of the substantive counts. Thus, we are here concerned with the addition rather than the substitution of charges.[5]

The distinction between substitution of charges and addition of charges brings into play one of the considerations of the *Pearce* decision which has been carried forward into the ruling below. In *Pearce* the Supreme Court held that in order to vindicate a more severe sentence following a second trial the sentencing judge must do so "based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original [trial]." 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656.[6] The District Judge applied a similar limitation in this case, holding that the only exception to the bar of "appearance of vindictiveness" would be "lack of existence of essential elements of the increased offense at the time of [the] original indictment or where the government, through no fault of its own, discovers new evidence of which it was unaware at the time of the original charge." 444 F.2d 1238, 1241. We believe that such ruling fails to take into account the difference between substituting charges and adding charges.

In a case such as *Pearce*, once sentence is imposed the sentencing court has made a final decision as to the appropriate punishment for the offense of which the defendant was convicted.

In a *Blackledge* situation the course of alleged criminal conduct will support only a single charge, with the prosecution having the option of charging the defendant under different provisions of the law carrying varying penalties. The bar of double jeopardy would preclude more than one such offense being charged. Once the judgment is made as to which penal statute is to be invoked the full extent of prosecutorial discretion has been exercised.

Under either of those circumstances, absent an explanation encompassing factors unknown or nonexistent at the time the original decision was made it could fairly be assumed that the sole factor intervening between such decision and the shift to a more punitive position—the defendant's exercise of a protected right—played a part in the determination. Hence, a reasonable apprehension of the realistic likelihood of vindictiveness might arise.

The same cannot be said as regards addition of charges. In this case, when the defendants were charged with the two substantive offenses the full extent of prosecutorial judgment and/or discretion had not been exercised. The possibility of indictment for conspiracy (an entirely separate offense containing essential elements different from those of the substantive offenses) remained, unhampered by any considerations of double jeopardy. Just as in *Bordenkircher v. Hayes, supra*, in which the prosecution initially withheld charging the defendant with an offense directly related to that alleged in the initial indictment, the prosecution in this case had not exhausted its arsenal of potential charges with the initial indictment.[7]

---

5. In this respect this action is factually closer to *Bordenkircher v. Hayes, supra*, than it is to *Pearce* and *Blackledge*.

6. In dealing with this aspect of the case in *Blackledge* the Supreme Court did not specifically address the question of what circumstances would justify substitution of a more serious charge by reason of the fact that there was no evidence on that point in the record. In a

footnote it was stated "This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset." 417 U.S. 21, 29, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628.

7. It could be said that the defendants' assertion of a constitutional right in this case effectively deprived the government of the opportunity to use the possibility of added charges as a "bar-

This subtle but critical distinction between the *addition* of charges as contrasted with the *substitution* of charges has been recognized in other cases considering *Pearce-Blackledge* challenges.

The Fifth Circuit has spoken to this matter in *Hardwick v. Doolittle*, 558 F.2d 292 (1977) and *Jackson v. Walker*, 585 F.2d 139 (1978).

In *Hardwick* the defendant was originally indicted for and convicted of bank robbery and aggravated assault on three policemen during the course of the robbery. The conviction was set aside on appeal. Before retrial a different prosecutor obtained a superseding indictment adding two new counts—robbery of a bank customer and assault on another individual. In considering the defendant's motion to dismiss the new charges on the basis of prosecutorial vindictiveness the court focused on the fact that they were added and not substituted charges. The court then held:

> Though these latter two events occurred in the same overall time interval as the acts covered by the first two indictments, they were different and distinct activities and thus were the subjects of discretionary prosecutorial decisions which up to then had not been made. These charges were not harsher variations of the same original decision to prosecute as in *Blackledge*. . . .
> The apprehension of vindictiveness which controlled the decision in *Blackledge* had no effect on prosecutorial discretion because there the decision to prosecute Perry for this very assault on his fellow prisoner had already been made. On the other hand, if we were to adopt apprehension of vindictiveness as opposed to vindictiveness in fact to be the standard by which we judge whether new prosecutions for different criminal activities may

be initiated, we would render the prosecutor's discretion meaningless in every case in which a defendant is initially indicted for less than all the violations his alleged spree of activity would permit. In such a situation, it is enough that a prosecutor, who decides to add charges to a prior indictment, prove that he did not in fact act vindictively. The test is to be applied to the prosecutor's actions rather than the defendant's reactions. 558 F.2d 292, 302.

The court ruled that in the circumstances of that case:

> While Hardwick has made a prima facie case by showing that the number of crimes charged against him as a result of this episode was doubled after he had succeeded in setting aside the original convictions, the prosecutor may rebut this prima facie proof by establishing his reasons for adding the two new charges were other than to punish a pesky defendant for exercising his legal rights. *Id.*, p. 301.

Among the "explanations which would negate vindictiveness" were included "mistake or oversight in the initial action [and] a different approach to prosecutorial duty by the successor prosecutor." *Ibid.*

*Jackson v. Walker, supra,* differs from *Hardwick* in that in *Jackson* the charges which were added in a reindictment following a successful appeal arose from the same basic conduct which underly the original charges, whereas in *Hardwick* the added charges were based upon different facts, albeit events which occurred in the same basic criminal episode.[8] In responding to a *Pearce-Blackledge* challenge to the second indictment the Fifth Circuit drew upon its decision in *Hardwick*, again making clear that the fact that these were added rather

gaining chip" in the course of plea-bargaining, as sanctioned by *Bordenkircher.* While courts have often condemned government prosecutors for overindicting, the result reached by the District Judge could inevitably lead to prosecutors obtaining initial indictments containing every count the facts could conceivably sustain, for fear that a defendant's assertion of some protected right which the government would be

required to oppose would create a virtually insurmountable obstacle to the obtaining of a superseding indictment adding counts to those initially set forth in an original indictment of reasonable scope.

**8.** In that respect *Jackson* is more closely related to this action.

than substituted charges called for a reasoned interpretation and application of the Supreme Court precedents. The *Jackson* court remanded the action to be reconsidered by the district court applying a "balancing test" drawn from the principles of *Hardwick* as more fully articulated in its opinion. That "balancing test" involved a weighing of the " 'freedom of appeal' interest of defendants against the 'freedom of discretion' interest of the prosecutor," 585 F.2d 139, 144, a task which the court recognized may be a complicated one. *Id.*, pp. 145, 149.

In *United States v. Ricard*, 563 F.2d 45 (2nd Cir. 1977), the defendant was originally charged with the misdemeanor of taking two books of money orders from the mail. Subsequent to the filing of a motion to suppress which was contested by the government and the day after defense counsel was advised that if the defendant did not plead guilty a superseding indictment would be sought a felony count was added to the charges. Following conviction on the felony count a *Pearce-Blackledge* prosecutorial vindictiveness issue was raised on appeal. In rejecting that argument the Second Circuit held:

> Appellant argues that the prosecutor's action in filing the superseding indictment created the apprehension of vindictiveness, and that accordingly *Pearce* and *Blackledge* require reversal of his conviction, despite the absence of any proof of a vindictive motive. However, even if the circumstances of this case arguably pose a realistic likelihood of the apprehension of prosecutorial vindictiveness and bring into play the principles of *Pearce* and *Blackledge*, this by no means mandates reversal. Unlike *Blackledge*, in this case the prosecutor was able to justify the increase in charges brought against appellant. Another attorney had originally

handled the case and filed the information charging a misdemeanor. The case was later assigned to her, and when she reviewed the file several weeks before the trial date, she realized that the facts warranted adding a felony charge. As Judge Griesa held, and as the facts adduced at trial showed, this was a reasonable step for the prosecutor to take. *Id.*, p. 48.

Similar views are expressed and the same result was arrived at by the Eighth Circuit in *United States v. Partyka*, 561 F.2d 118 (1977). In that action within two weeks of a successful appeal the prosecution doubled the number of narcotics offenses charged against the defendant.[9] In rejecting a prosecutorial vindictiveness challenge to the second indictment the court held:

> We do not read *Perry* as taking away from prosecutors their traditional and proper discretion in deciding which of multiple charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time. . .
>
> In other words, we do not think that *Perry* holds that if at a given moment a prosecutor is in a position to indict a defendant on two separate felony charges he must indict on both charges at the same time unless he cares to assume the risk that if a prosecution on one charge only aborts as a result of defense efforts, it will be held that he has been guilty of vindictive prosecution if he promptly obtains an indictment on the other charge. *Id.*, p. 124.

Primary among the authorities relied upon by appellees and drawn upon by the District Judge are the decisions in *United States v. Jamison*, 164 U.S.App.D.C. 300, 505 F.2d 407 (D.C.Cir.1974), and *United States v. Ruesga-Martinez*, 534 F.2d 1367 (9th Cir. 1976).[10] Each of those rulings is

---

**9.** The government explained the failure to include all charges in the first indictment as an effort to protect an informant's identity. From a reading of the facts of the case, and considering that the informant's identity was disclosed at the first trial, that excuse appears to be somewhat tenuous.

**10.** From examination of the authorities cited to us in this action and further research into the question it appears that the concept of "appearance of vindictiveness" may well originate in the *Ruesga-Martinez* decision.

distinguishable from the case before us for both involved substitution of charges under circumstances where double jeopardy would bar prosecution for the first and second offenses charged against the defendants.[11]

■ We must, however, recognize that those decisions contain very broad and strong language (which could be considered as dicta) which must be considered as philosophically incompatible with our views of *Pearce* and *Blackledge* and the interpretations placed upon those rulings in the other appellate decisions previously reviewed herein. Additionally, the rationale of *Ruesga-Martinez* together with its "appearance of vindictiveness" language has been extended by the Ninth Circuit to invalidate added as well as substituted charges. *United States v. DeMarco*, 550 F.8d 1224 (1977); *United States v. Alvarado-Sandoval*, 557 F.2d 645 (1977); *United States v. Groves*, 571 F.2d 450. Insofar as the *Jamison* ruling and the foregoing Ninth Circuit authorities can be construed as supportive of the view that "appearance of vindictiveness" is a proper standard under *Pearce* and *Blackledge* and/or represent an interpretation of those authorities differing from that adopted herein we must respectfully decline to follow such decisions.[12] Similarly, we cannot concur in the view that inexperience of counsel cannot be an acceptable excuse for failure to include all charges in an original indictment, *Ruesga-Martinez* at p. 1370, nor agree that only events after the initial indictment can be looked to in order to dispel apprehension of prosecutorial vindictiveness, *Jamison* at pp. 416–417.

We are in agreement with the basic approach of the Fifth Circuit to this issue of prosecutorial vindictiveness. However, we prefer to articulate the controlling propositions in a slightly different fashion.[13]

■ The basic premise must proceed from the proposition that we are primarily concerned with the realistic likelihood of vindictiveness in the prosecutor's conduct, *Blackledge v. Perry, supra,* bearing in mind that resolution of such issue must take into account a reasonable apprehension of retaliatory motivation on the part of the defendant, *North Carolina v. Pearce, supra.*

■ Proceeding from that premise, if the prosecution substitutes charges increasing the potential severity of the punishment to which the defendant is exposed, such substitution of charges creates a *prima facie* case of prosecutorial vindictiveness which can be overcome only by showing that intervening circumstances, of which the prosecution could not reasonably have been aware created a fact situation which did not exist at the time of the original indictment. Such a standard places primary emphasis on the apprehension of retaliatory motivation—the perception of the defendant.

■ If the prosecution adds new charges arising from criminal conduct relatively distinct from that underlying the original charge the defendant must show actual vindictiveness in the bringing of the added charges, although a *prima facie* case may be made out by the mere fact of the added charges if no plausible explanation is offered by the prosecution. This standard focuses on the intent of the prosecutor.

---

11. In *Jamison* defendants originally charged with second degree murder were reindicted for first degree murder following declaration of a mistrial. The defendant in *Ruesga-Martinez* was charged under a felony provision of the immigration laws when he refused to waive trial before a magistrate, having originally been charged with a misdemeanor applicable to the same acts of unlawful entry and reentry.

12. The District Judge also relied upon *United States v. Johnson*, 537 F.2d 1170 (4th Cir. 1976) with regard to the appearance of vindictiveness. That case, which involved reindictment upon failure of a plea bargain, draws heavily upon *Jamison* in support of its conclusion, which we consider to be representative of the incorrect application of *Pearce* and *Blackledge*. Further, the continued viability of *Johnson* is very questionable, as its views of prosecutorial discretion vis-a-vis plea bargaining appear to be inconsistent with the ruling in *Bordenkircher v. Hayes, supra.*

13. We believe that the differences are more matters of semantics than substance, and the same results would probably obtain under both approaches.

■ The third possibility, and the one pertinent to the facts of this case, concerns the addition of a new charge for a different and distinct offense which was a different and distinct consequence of the same basic conduct underlying the original charge. In that event, the fact of the added charges would make out a *prima facie* case of prosecutorial vindictiveness, but such *prima facie* case would be subject to rebuttal by the prosecution offering evidence of facts which reasonably explain or justify the action taken and negate any inference of vindictiveness in fact.[14] This standard takes into recognition both the perception of the defendant and the intent of the prosecutor, and if the trial court is not satisfied as to the plausibility or substantiality of the government's explanation the reasonable apprehension of vindictive motivation may be given controlling weight.[15]

■ It is clear from the District Judge's opinion that the standard which he applied is that which we deem applicable to a substitution of charges. Also, as previously noted, it is not clear whether the District Judge resolved the question of the credibility of the prosecution's explanation. We, therefore, reverse and remand for redetermination under the appropriate standard as set forth herein.

MERRITT, Circuit Judge, concurring.

I concur in the result and much of the reasoning of Judge Green's opinion for the Court. Judge Green's opinion attempts to find reasonable limits for the concept of the "apprehension of prosecutorial vindictiveness," a broad concept whose reach is theoretically endless. My own view is that the concept must be limited even further. It should be limited to post-trial prosecutorial conduct which undermines double jeopardy values.

I.

I do not believe that very much of the elusive concept of "vindictiveness" described in the majority opinions in the *Pearce* and *Perry* cases is still alive after the *Bordenkircher* case. If that broad concept is still alive, then Judge Keith is right that the concept requires a balancing process, although I would disagree with the way he holds his thumb on the scales while he weighs the factors. But balancing is unnecessary, in my judgment, because the Supreme Court indicated in *Bordenkircher* that the concept of "vindictiveness" announced in *Pearce* and *Perry* is narrow.

In *Pearce*, the Supreme Court held under the due process clause that a state trial judge may not double the punishment imposed at the first trial when the defendant is reconvicted of the same offense after a successful appeal and new trial. In *Perry*, the Court held that after a defendant is tried for a misdemeanor and appeals his conviction, the prosecutor violates due process at the new trial when he seeks to reindict and try the defendant for a felony for the same criminal event. In both cases, the problem arose because a majority of the Court, in a long line of cases, has historically read the protections of the double jeopardy clause narrowly to allow the state to "up-the-ante" on a criminal defendant at a new trial following an appeal. In *Pearce* and *Perry*, a majority of the Court was unwilling to retreat from its prior double jeopardy rulings or to reinterpret the double jeopardy clause along the broader lines suggested in the concurring opinions of Justices Douglas and Harlan in *Pearce*, 395 U.S. 711, 726, 744, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). So in order to remedy the wrong, the Court was forced to conceptual-

14. Inadvertence and prosecutorial inexperience would be within the range of explanations blunting a claim of prosecutorial vindictiveness.

15. This approach is consistent with this Court's prior decisions regarding questions of prosecutorial vindictiveness. In *United States v. Sturgill*, 563 F.2d 307, 309 (6th Cir. 1977), it was recognized that if "a neutral explanation ap-

peared on the record" the bringing of a more serious charge was constitutionally permissible. In *Hayes v. Cowan*, 547 F.2d 42, 44–45 (6th Cir. 1978), reversed on other grounds *Bordenkircher v. Hayes, supra*, it was stated that a "strong inference" of vindictiveness may arise from the unexplained imposition of more serious charges.

ize the problem more broadly under the due process clause. It found that "vindictiveness" by the state, or the apprehension of retaliation, is the key principle and declined to base its holding on a double jeopardy analysis. But the cases retain their double jeopardy flavor.

*Bordenkircher*, it seems to me, suggests that *Pearce* and *Perry* are limited to the double jeopardy-type situation. It is difficult to find a clearer case of "vindictiveness" than *Bordenkircher*. There the Court was faced not simply with the appearance of prosecutorial vindictiveness but with the reality. The prosecutor told the defendant that unless he pled guilty to fraud, he would be reindicted as an habitual criminal, an offense carrying life imprisonment. When the defendant refused to enter such a plea, the prosecutor made good his threat, and the Supreme Court upheld the habitual criminal conviction. It is hard to argue against Justice Blackmun's observation in dissent in *Bordenkircher* that the Court "is departing from, or at least restricting, the principles established" in *Pearce* and *Perry*. 434 U.S. at 365.

It is difficult to reconcile *Pearce* and *Perry* with *Bordenkircher* if we take an expansive view of the concept of "vindictiveness" and the "appearance of vindictiveness" announced in the first two cases. But the cases become more understandable and consistent if we put aside the concept of general prosecutorial vindictiveness under the due process clause and look at *Pearce* and *Perry* as due process cases designed to protect double jeopardy values involving post conviction "vindictiveness."

In both cases, the state tried to "up-the-ante" by imposing a harsher penalty on retrial after the appeal. They are both cases of successive prosecutions for the same criminal event. Except for the very broad due process "vindictiveness" language used by the Court, the two cases fit much better the double jeopardy mold, for, after all, the double jeopardy clause was designed in part to restrain a certain species of prosecutorial vindictiveness, the kind that leads a dissatisfied prosecutor to want

to get the defendant again, or put him away longer, after the first trial is over. In the competitive, adversary environment of the criminal trial, it is not unnatural for a dissatisfied prosecutor to want to try the defendant again, but that is the precise species of vindictiveness the double jeopardy clause is designed to prevent. That is what happened in *Pearce* and *Perry* and that, it seems to me, is the only species of vindictiveness which the Supreme Court struck down in those cases.

In *Bordenkircher*, on the other hand, like the instant case, there was no threat of a second trial, nor any threat of greater punishment upon reconviction, and double jeopardy-type, post-trial vindictiveness did not come into play. In *Bordenkircher*, the Court found that regular prosecutorial "hard nosedness" is acceptable during the preliminary and trial stages of the criminal process before double jeopardy values come into play at the end. It is not, as Judge Keith suggests in dissent, the plea bargaining context of *Bordenkircher* that distinguishes it from other "vindictiveness" claims. It is the double jeopardy context of *Pearce* and *Perry* that limit and control the vindictiveness principles announced in those two cases.

## II.

The concept of prosecutorial "vindictiveness" and the "appearance of vindictiveness" is theoretically endless and unmanageable unless limited to the post-conviction, double jeopardy context. Otherwise, the concept is so elusive that nobody—judge, prosecutor or defendant—can determine where it starts or stops. The concept also appears inconsistent with the competitive, adversary nature of the pre-trial and trial process.

By necessity the public prosecutor must take hard positions contrary to the liberty interests of the accused. Our society and our jurisprudence have never reached agreement on whether the purpose of the penal system is to deter, to treat or to avenge. Whether he is motivated by deterrence or vengeance or some more complicat-

ed but less explicable state of mind, the prosecutor's attitude toward the defendant in a hard-fought criminal case is seldom benign or neutral.

During the pre-trial and trial process, the prosecutor must decide what position to take on an endless variety of procedural, evidentiary, substantive and tactical questions. He may refuse to agree to discovery, severance, bail, plea bargaining, the exclusion of witnesses from the courtroom; he may try to get into evidence prior criminal conduct or various co-conspirator and other kinds of hearsay; he may be harsh in his characterization of the defendant's conduct to the jury; he may recommend probation or refuse to prosecute altogether; or he may make a deal with a co-defendant in exchange for incriminating testimony and on and on.

The following questions demonstrate, in my mind, the unmanageability of the vindictiveness concept in the trial context: Once a defendant has successfully asserted a particular legal right in the course of the criminal process, is a prosecutor guilty of unconstitutional vindictive conduct, which "chills" the exercise of the legal right asserted, each time the prosecutor thereafter takes a position contrary to the interests of the defendant? If not, why not, and what is the standard of measurement? What difference does it make that the prosecutor's conduct took place *after* rather than *before* the defendant asserted the right? The "exercise" of a legal right can be more effectively "chilled" before it is asserted than after. What difference should it make that the defendant was unsuccessful rather than successful in asserting the legal right? On the facts of this case, would it make any difference that the defendant lost his motion for bail rather than won it? If we are talking about the "exercise" of a legal right, it should not make any difference that its exercise happened to be unsuccessful in the particular case.

Many constitutional, common law and evidentiary principles protect the accused and should be given an expansive meaning. But to require, as a general principle, the general absence of the "appearance of prosecutorial vindictiveness" in the heat of battle is an unworkable goal in our adversary system.

## III.

For these reasons, I would hold that the kind of vindictive behavior proscribed by the due process clause relates to double jeopardy values and that the concept is limited to prosecutorial vindictiveness after the first trial is over. That means that in the instant case there was no unconstitutional prosecutorial behavior.

KEITH, Circuit Judge, dissenting.

Under our system of law, a prosecutor has awesome power because of his largely unreviewable discretionary authority to bring charges. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Cowan,* 524 F.2d 504 (5th Cir. 1975), *cert. denied sub nom. Woodruff v. United States,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). For all the theoretical power we possess as federal judges, it is only in an unusual case that we can step in and curb a dubious prosecution. *See Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Leggett and Platt, Inc.,* 542 F.2d 655, 658 (6th Cir. 1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977). As the Supreme Court noted in *United States v. Dotterweich,* 320 U.S. 277, 285, 64 S.Ct. 134, 138, 88 L.Ed. 48 (1943), "[o]ur system of criminal justice necessarily depends on conscience and circumspection in prosecuting officers . . ."

One of the few controls on prosecutorial discretion is the rule enunciated in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The defendant in *Blackledge* was convicted on a misdemeanor assault charge in state court. When he exercised his statutory right of appeal to a trial *de novo,* the prosecutor obtained a felony assault indictment covering the same conduct. The Court held that since the prosecutor had "a considerable stake" in deterring such appeals, his action raised a spectre of prosecutorial vindictiveness

which could not be squared with due process. The state was barred from bringing the heavier charge.

*Blackledge's* proscription of prosecutorial vindictiveness followed the rule laid down in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) relating to judicial vindictiveness. If a convicted defendant successfully won a new trial on appeal, it was impermissible for the trial judge on retrial to resentence him to a stiffer term absent on-the-record findings based on previously unknown facts.[1]

These authorities provide a sound rationale for a court to police prosecutorial abuse.[2] Today, my colleagues interpret

1. See also *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (where increased sentence was imposed by different judge after appeal to a trial *de novo*, possibility of vindictiveness was minimal); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1972) (minimal possibility of vindictiveness where different jury imposed stiffer sentence on retrial).

   There exists some tension between *Pearce, Colten* and *Chaffin*, as is inevitable when a court formulates rules to try to control subjective behavior. See *Hardwick v. Doolittle*, 558 F.2d 292, 299 (5th Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978). Nonetheless, "[t]he lesson that emerges from *Pearce, Colten,* and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of vindictiveness." *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).

2. Neither of my colleagues addresses the government's threshold arguments that *Blackledge* should be completely inapplicable here. Judge Green's opinion implicitly rejects these claims since he does apply a form of *Blackledge* analysis. I agree that the government's arguments are frivolous and that this case must be analyzed under *Blackledge*.

   The government claims that *Blackledge* is inapplicable on the facts of this case and advances three arguments in support. First, the government asserts that what occurred here was so trivial that there existed no real possibility of vindictiveness. The government correctly states that *Blackledge* only applies where the prosecutor has a "considerable stake" in deterring the exercise of an established right. The government contends that it does not have such a considerable stake in chilling a defendant's right to seek admittance to bail. It bases this argument on the notion that a bail hearing does not involve a burdensome expenditure of prosecutorial resources, nor the potential release of a convicted felon. The government would have us restrict the *Blackledge* rule to cases where the right exercised by the defendant carries the potential for *retrial*.

   The government's argument that prosecutors are not much concerned whether defendants are released on bail can only be described as surprising to anyone familiar with our criminal justice system. An eager-to-convict prosecutor has every reason to favor keeping a defendant in jail pending trial. A jailed defendant has great difficulty cooperating with his attorney in building a defense. Incarcerated defendants are under more pressure to plea-bargain. Further, in the eyes of a maliciously vindictive prosecutor who is bent on punishing a defendant, time spent in jail awaiting trial offers great satisfaction, even if the defendant is ultimately acquitted.

   The facts of this case demonstrate a prosecutor's considerable stake in the granting or denial of bail to criminal defendants. After the arrest of Thurston Brooks, Tallice Andrews and Fannie Braswell, Fannie Braswell turned state's evidence and offered to testify against her two co-defendants. A confidential informant told the assistant U.S. Attorney that the defendants had threatened Ms. Braswell with bodily harm. In response the government placed Ms. Braswell in the custody of the Federal Witness protection program and strenuously argued to both the Magistrate and the district court that the defendants should not be released on bail. It is difficult to imagine a case in which the prosecutor's stake in deterring the exercise of a right is more clearly presented.

   The government's attempt to limit *Blackledge* to situations involving a full retrial has no basis in logic. While it is true that a prosecutor always has a considerable stake in avoiding the cost and inconvenience of a trial, a prosecutor often has a similar motivation to deter the exercise of Constitutional or statutory rights where something other than a full retrial is involved. To the extent that the exercise of a right in some way decreases the likelihood of conviction or makes a prosecutor's job more burdensome, the prosecutor has an incentive to deter the exercise of that right.

   I recognize that there may exist situations where a court could find that a prosecutor was utterly uninterested whether a defendant was released on bail. However, there would be a clear record of this in that the government would not have opposed bail in the first place.

   The government's second argument is that it did not *substitute* a more severe charge, as occurred in *Blackledge;* it merely *added* the extra conspiracy charge. I do not see why this distinction should make any difference. As

narrowly the principles in those decisions and severely limit a needed and vital control on prosecutorial discretion. Because I cannot agree with my colleagues' abject capitulation to potentially abusive use of prosecutorial power, I respectfully dissent.

## I  Prosecutorial Vindictiveness—The Problem

*Pearce* and *Blackledge* stand for the general proposition that vindictive conduct by persons with the awesome power of judges and prosecutors is unacceptable in our jurisprudential system. However, there is no need to show actual vindictiveness,[3] the appearance of vindictiveness is *prima facie* sufficient. As the Court noted in *Blackledge, supra,* 417 U.S. at 28, 94 S.Ct. at 2102:

> The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack

his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U.S., at 725 [, 89 S.Ct. 2072]. We think it clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo,* without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.

The concepts which underlie the *Pearce* and *Blackledge* decisions, then, are 1) forestalling actually vindictive behavior, because it is morally wrong[4] and 2) ensuring that the appearance of vindictive behavior does not deter criminal defendants from exercising their rights. Applying these concepts in varying situations, the Supreme Court has determined what "prophylactic rule"[5] if any, need be applied.

In *Pearce, supra,* the Court imposed a two-fold requirement on a judge to justify

---

this court noted in *United States v. Sturgill,* 563 F.2d 307 (6th Cir. 1977), the important question is whether a defendant is subject to the possibility of enhanced punishment. This is what motivates the vindictive prosecutor and chills the defendant's exercise of his rights. *See Miracle v. Estelle,* 592 F.2d 1269, 1275–76 (5th Cir. 1979); *Jackson v. Walker,* 585 F.2d 139, 146 (5th Cir. 1978); *United States v. Jamison,* 164 U.S.App.D.C. 300, 308, 505 F.2d 407, 415 (D.C. Cir. 1974).

The government thirdly argues that the danger of prosecutorial vindictiveness is minimized here by the presence of an independent grand jury. This argument misperceives *Blackledge.* All that the grand jury did here was determine whether there was probable cause for the charges. The grand jury did not address why charges were brought or whether the bringing of charges would deter defendants from exercising their rights. Further, the notion that a grand jury operates as a significant check on a prosecutor is rather remarkable. Although the "runaway" grand jury is not unknown in our history, anyone with any knowledge of our criminal justice system knows that grand juries routinely return whatever indictment the prosecutor requests. Given the fact that the prosecutor orchestrates the grand jury proceedings and that no opposing attorneys are allowed to participate in them, any other result would be surprising. I note that in *Blackledge* itself, *supra,* 417 U.S. at 23, 94 S.Ct. 2098, the prose-

cutor also sought—and received—a grand jury indictment for a greater offense when the defendant exercised his right to a new trial. Thus, *Blackledge* implicitly rejects the government's argument as well.

3. By "actual vindictiveness" I do not mean that the prosecutor is motivated by malice. Rather, I mean that the prosecutor is motivated by a desire to retaliate against a pesky defendant who is making the former's job more difficult for him/her.

In the case at bar, the district court did not question the prosecutor's integrity or motivation. I have no reason to do so. On the contrary, I have high regard for this prosecutor and the U.S. Attorney's Office for which she works.

4. *See North Carolina v. Pearce,* 395 U.S. 711, 723–24, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Compare id.* at 738–39, 89 S.Ct. 2072 (Opinion of Black, J.). Although this view is based on Aristotelian and Kantian notions of "fairness," one might add that it also serves to uphold the legitimacy of the system in the eyes of the public and thus can be justified under utilitarian analysis as well.

5. *Colten v. Kentucky,* 407 U.S. 104, 116, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

a seemingly vindictive resentencing. First, there must be an on-the-record showing why the judge increased the sentence the second time around. Second, the reasons for the increased sentence "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.*, 395 U.S. at 726, 89 S.Ct. at 2081.[6]

The problem is that in *Blackledge*, the Court did not indicate what formal standard was to be applied to test the seemingly vindictive conduct of a prosecutor. Analogizing to *Pearce*, defendants urge that in a case such as this, the conduct be deemed to have been vindictive unless there are new, after-the-fact reasons on the record why the prosecutor "upped the ante." The government's view is that *Blackledge* should be applied gingerly (if at all) in pre-trial situations and that it should be able to advance reasons such as inadvertence and neglect to justify its conduct. The majority opinions more or less adopt the government's position.

The other courts of appeals which have considered this issue have advanced varying standards. The Ninth Circuit has ruled that where a prosecutor increases the charges in apparent response to the defendant's exercise of a procedural right, the prosecutor bears a "heavy burden" of dispelling the resultant presumption of vindictiveness. It is vital to dispel the appearance of vindictiveness as well as actual vindictiveness. *See United States v. Groves*, 571 F.2d 450 (9th Cir. 1978) (presumption arose when prosecutor brought added charges in response to defendant's motion to dismiss on statutory speedy trial grounds); *United States v. Alvarado-Sandoval*, 557 F.2d 645 (9th Cir. 1977) (presumption arose when defendant refused to plead to misdemeanor charge and indicated that pre-trial motions would be raised.

"Immaterial that, due to a failure of communication within the office, the assistant U.S. Attorney who initially appeared was not personally aware of [defendant's prior] record."); *United States v. DeMarco*, 550 F.2d 1224 (9th Cir.) *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977) (presumption arose when defendant insisted on his statutory venue rights); *United States v. Ruesga-Martinez*, 534 F.2d 1367 (9th Cir. 1976) ("heavy burden" of offsetting presumptive prosecutorial vindictiveness not offset by showing of prosecutor's inexperience).

The Fifth Circuit has ruled in one case that a prima-facie presumption of vindictiveness arises when a prosecutor apparently acts to chill the exercise of a right which can be dispelled if the prosecutor can give non-vindictive reasons for his conduct. *Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978). *Hardwick's* concern over the existence of actual vindictiveness should be contrasted with the balancing test advanced in *Jackson v. Walker*, 585 F.2d 139 (5th Cir. 1978) where the court stated that: "In deciding whether to require a showing of actual vindictiveness or merely a showing of reasonable apprehension of vindictiveness, a court must weigh the extent to which allowing the second indictment will chill the exercise of the defendant's appeal rights against the extent to which forbidding the second indictment will infringe on the exercise of the prosecutor's independent discretion." *Id.* at 145. *See also United States v. Thomas*, 593 F.2d 615, 624 (5th Cir. 1979); *Miracle v. Estelle*, 592 F.2d 1269 (5th Cir. 1979). The other courts of appeals have not specifically articulated the requirements for dispelling the appearance of prosecutorial vindictiveness but have dealt with the issue on an *ad hoc* basis.[7]

6. Compare Justice White's view that would "authorize an increased sentence on retrial based on any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding." *North Carolina v. Pearce, supra* at 751, 89 S.Ct. at 2089.

7. *See United States v. Johnson*, 537 F.2d 1170 (4th Cir. 1976) (Defendant successfully overturned guilty plea on appeal. Court of Appeals accepted prosecutor's explanation that increased charges on remand for trial were added simply to create a stronger case for the govern-

Questions of prosecutorial vindictiveness are not easy to resolve. Some Courts have emphasized the need to deter actual retaliatory vindictiveness, e. g. *Hardwick v. Doolittle, supra* ; while other courts have emphasized the need to avoid the appearance of vindictiveness which deters others from exercising their rights, e. g. *United States v. Ruesga-Martinez, supra.* The first view emphasizes the moral consideration of preventing a prosecutor from retaliating because a troublesome defendant insists on his rights. The second view emphasizes the necessity of preventing other defendants from being apprehensive about exercising statutory or constitutional rights.

There is universal agreement in the courts that a finding of actual vindictiveness warrants immediate imposition of *Blackledge's* proscriptions.[8] The disagree-

ment is over dealing with situations where there is an appearance of vindictiveness from a defendant's viewpoint, but where this appearance is not strong [9] or where the prosecutor simply made an honest mistake. In those cases, there exists the strong countervailing policy of giving leeway to prosecutorial discretion and letting a prosecutor bring charges where there exists probable cause that the defendant violated the law.

An additional complicating factor is the difficulty of showing actual vindictiveness, which involves a determination of the prosecutor's state of mind. Rare is the prosecutor who will openly admit that he added on charges in retaliation against the defendant. Sometimes it is clear that a retaliatory motive is the only basis for a prosecutor's actions,[10] just as it is sometimes clear that there does not exist even an appearance of

ment, but held that the defendant's apprehension of vindictiveness was sufficient to bar them); *United States v. Ricard*, 563 F.2d 45 (2d Cir. 1977) (apprehension of prosecutorial vindictiveness successfully rebutted by showing that a different U.S. Attorney reviewed the case before trial and made the determination that augmented charges were warranted); *United States v. Partyka*, 561 F.2d 118 (8th Cir. 1977) (any fear of vindictiveness rebutted because reversal of conviction on appeal disclosed informant's identity and thus removed government's reason for not earlier seeking prosecution on stiffer charges); *United States v. Preciado-Gomez*, 529 F.2d 935 (9th Cir.) *cert. denied*, 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197 (1976) (defendant's overall conduct, which lead to an increased charge after a mistrial was declared, was not fully known by the prosecutor until after mistrial was declared); *United States v. Jamison*, 164 U.S.App.D.C. 300, 505 F.2d 407 (D.C. Cir. 1974) (increase in charges could be justified by intervening events or by discovery of new evidence of which the government was excusably unaware. Court did not undertake "to anticipate definitively all those circumstances which might be thought to warrant a prosecutor's escalation of an initial indictment").

8. *See Miracle v. Estelle*, 592 F.2d 1269 (5th Cir. 1979) (". . . vindictiveness is always an illegitimate consideration in prosecutorial decisionmaking"); *Hardwick v. Doolittle*, 558 F.2d 292, 299–300 (5th Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978) (vindictiveness is an improper factor in the prosecutorial process). In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court found no due process

violation even when the prosecutor admitted that he acted out of vindictiveness. As I will discuss below, however, I think that *Bordenkircher* presents a unique factual situation which is inapplicable here.

9. *See, e. g. United States v. Ricard*, 563 F.2d 45, 48 (2d Cir. 1977) (prosecutor brought stiffer superseding indictment after a conversation with defense counsel in which the latter indicated that the defendant was prepared to go to trial. Court questioned whether this was enough to raise a likelihood of vindictiveness). *See also Jackson v. Walker*, 585 F.2d 139, 146–148 (5th Cir. 1978) (overall circumstances of the case presented a "remote" likelihood of prosecutorial vindictiveness).

10. *See e. g. Hayes v. Cowan*, 547 F.2d 42, 43 n.2 and 45 (6th Cir. 1976), *rev'd sub nom. Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (prosecutor admitted vindictive motive). *See also North Carolina v. Pearce*, 395 U.S. 711, 715, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (district court had found the conclusion "inescapable" that state trial judge had increased sentence in retaliation for an initial successful appeal); *United States v. McFadyen-Snider*, 590 F.2d 654 (6th Cir. 1979) (perjury indictment would probably not have been brought had defendant not succeeded in her appeal from an initial conviction); *United States v. Groves*, 571 F.2d 450, 454 (9th Cir. 1978) ("The conclusion is inescapable on this record that the government brought the marijuana charge in retaliation for the appellant's exercise of his statutory rights on the cocaine charge.")

vindictiveness when a prosecutor added charges.[11] The typical case, however, is in between these extremes. A prosecutor's actions will appear vindictive, but the prosecutor will claim inadvertence or mistake. To reject these explanations in every case is to intrude deeply into prosecutorial discretion. Yet, ready acceptance of glib prosecutorial explanations for the seeking of heavier charges could make a mockery of *Blackledge*, which focused on the need to thwart the appearance of vindictiveness and the concomitant chill on other defendants' exercise of their rights. As I will explain below, this is precisely what is wrong with my colleagues' views.

## II Prosecutorial Vindictiveness—A Suggested Approach

I would adopt an overall balancing test somewhat similar to the balancing test advanced in *Jackson v. Walker*, 585 U.S. 139 (5th Cir. 1978) as providing the best resolution of these difficulties. A court should first decide as a threshold matter whether a prosecutor's action in seeking a heavier second indictment appears to be vindictive. If so, the court should examine the facts and weigh the extent to which allowing the second indictment will chill defendant's exercise of the right in question with the extent to which forbidding the second indictment infringes on the prosecutor's charging authority. If the balance falls in favor of the defendant, then the government would have the heavy burden of offsetting the appearance of vindictiveness. If the balance favors the government then there would arise a prima-facie case of vindictiveness, but all the government need do is provide neutral explanations to demonstrate that it did not, in fact, act vindictively.

The balancing approach makes a great deal of sense when one realizes that there are degrees of apparent vindictiveness which have varying effects on defendants and their propensity to exercise their rights. Thus, if a prosecutor seeks to augment the charges when a defendant exercised his right to a trial *de novo*, as occurred in *Blackledge*, the appearance of vindictiveness is so great that almost no explanation will justify it.[12] On the other hand, if a prosecutor seeks a superseding indictment on retrial which substitutes a lesser charge which happens to carry a greater potential prison term, an appearance of vindictiveness certainly exists, but defendants' apprehension of vindictiveness will not be great.[13] See *Jackson v. Walker, supra*.

The balancing approach also takes into account varying degrees of prosecutorial in-

---

11. See *Chapman v. Estelle*, 593 F.2d 687 (5th Cir. 1979) (defendant succeeded in having his bargain-for guilty plea set aside. Prosecutor refused to bargain further and brought enhanced charges. Not vindictive for prosecutor to refuse to reoffer same plea which defendant had gotten set aside); *United States v. Snell*, 592 F.2d 1083 (9th Cir. 1979) (substituted charge carried same maximum sentence); *United States v. Thurnhuber*, 572 F.2d 1307 (9th Cir. 1977) (where mistrial was declared by the trial judge, prosecutor's action in adding additional charges prior to retrial was not vindictive since it was not done in response to defendant's assertion of a procedural right). *Martinez v. Estelle*, 527 F.2d 1330 (5th Cir. 1976) (defendant agreed to waive a jury trial in exchange for prosecutor's waiver of a habitual offender count and recommendation of a 15 year sentence in the event of conviction. Conviction and 15-year sentence resulted, but reversed on appeal. No vindictiveness where, at retrial, defendant was convicted and sentenced or original, stiffer charges after rejecting the same agreement he had been offered earlier);

*United States v. Anderson*, 514 F.2d 583 (7th Cir. 1975) (defendant agreed to plead guilty in exchange for a lowering of the charges against him. When plea bargain was set aside, original charges were reinstated.)

12. In *Blackledge* itself, the Court indicated that had the state shown that it had been previously impossible to proceed on the more serious charge, then no vindictiveness problem would exist. See *Blackledge, supra*, 417 U.S. at 21 n. 7, 94 S.Ct. 2098.

13. This approach is akin to that used in *United States v. McFadyen-Snider*, 590 F.2d 655 (6th Cir. 1979). There, this court affirmed a factual determination that the bringing of a perjury indictment after a successful appeal had the effect of punishing the defendant for exercising her rights.

In that case, the factual determination was one of actual vindictiveness—the prosecutor probably would not have brought the perjury charge had the defendant lost her appeal.

terest. For example, a prosecutor should have greater latitude to augment charges when dealing with multiple criminal acts or a crime spree, *see Jackson v. Walker, supra* 585 F.2d at 145–46; *Hardwick v. Doolittle, supra* 558 F.2d at 301, than when he is dealing with a single criminal act. *See Miracle v. Estelle, supra* 592 F.2d at 1276. Similarly, a prosecutor should have broader leeway to add charges before an initial trial than in a case where a defendant is to be tried a second time. *See United States v. Thomas, supra* 593 F.2d at 624. In each case, there would be a factual determination to be made, necessarily on an *ad hoc* basis.[14]

### III The Instant Case

In this case, the district court correctly made the threshold determination that the government's seeking of an additional charge after the defendants "won" a hotly contested bail motion implicated analysis under *Blackledge*. The government sought to show that the reason it acted the way it did was that the Assistant U.S. Attorney was inexperienced and that the conspiracy count would have been added earlier but for factors beyond her control—an office moratorium on grand jury indictments because of legal challenges to grand jury composition, a grand jury recess during the new year's holidays and preemption of her grand jury time by a Senior Assistant U.S. Attorney. Relying on *United States v. De Marco, supra* and *United States v. Ruesga-Martinez, supra,* the district court concluded that these explanations were facially insuf-

ficient to meet the government's "heavy burden" of dispelling the appearance of vindictiveness. Applying the overall balancing test I advance in this opinion, I agree with the district court.[15]

Applying the balancing test advanced in this dissent, I think it clear that on these facts, the chilling effect on defendant's freedom to seek release on bail outweighed the need to give prosecutors freedom to decide whom to prosecute. The critical factor in this case was that the government strongly opposed defendants' release on bail. Despite the fact that defendants were arrested in November of 1975 and indicted in November of 1976, it was only after the defendants successfully appealed their bail determination from the magistrate to the district court in January of 1977 that the prosecutor added the conspiracy count. In addition, no crime spree was involved; the government added extra charge encompassing the same underlying conduct. These circumstances create a strong appearance of vindictiveness strikingly similar to that in *Blackledge* where the defendant appealed to a trial *de novo.* Concomitantly, the inevitable effect of this is to create a strong apprehension of vindictiveness among other defendants in the same situation.

I recognize that the government's interest in having broad charging discretion in a pretrial situation such as this one is substantial. This case presents an instance where application of the balancing test reveals both a strong defendant's interest and a strong prosecutor's interest.[16] On these

---

14. Obviously, the length of additional potential incarceration is a significant factor in determining the extent to which the prosecutor's conduct chilled defendants in the exercise of their rights. *Cf. United States v. Sturgill,* 563 F.2d 307 (6th Cir. 1977).

15. The district court suggested that only two explanations for apparently vindictive behavior would suffice in *all* cases: 1) lack of existence of essential elements of the increased offense at the time of the original indictment; 2) discovery of new evidence of which the government was previously unaware. *See* 444 F.Supp. at 1244. I agree with the district court that this type of objective explanation is what is required for the prosecutor to meet his heavy

burden of offsetting the appearance of vindictiveness.

I disagree with the notion that this type of explanation is required in all cases. Should application of the balancing test I advance in this dissent result in a presumption of actual vindictiveness, then neutral explanations such as those advanced by the prosecutor in this case would suffice, if credited, to offset the presumption. *See Hardwick v. Doolittle, supra,* 558 F.2d at 301.

16. *Contrast Miracle v. Estelle,* 592 F.2d 1269 (5th Cir. 1979) (substantial defendant's interest and weak prosecution interest. In addition, state did not try to explain its conduct.); *Jackson v. Walker,* 585 F.2d 139, 148 (5th Cir. 1978)

facts, I think that the balance should be struck in favor of the defendant; the appearance of vindictiveness was simply too great. Accordingly, the test which the government should meet is dispelling the appearance of vindictiveness and not the lesser standard of offsetting an inference of actual vindictiveness.[17]

I agree with the district court that the government's proffered explanations, are insufficient to dispel the apprehension of vindictiveness which resulted here.[18] I do not think that defendants should have to worry that successful appeal of a bail motion will result in their facing additional charges.

### IV The Views of My Colleagues

My colleagues have written two separate opinions in this case. Their views on the prosecutorial vindictiveness issue are quite different from mine. Unfortunately for the law of this circuit, each of their opinions cannot be reconciled with the other.

A fundamental premise underlying both of my colleagues' opinions is that *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) significantly limits *Blackledge v. Perry*. Indeed, Judge Merritt takes the position that *Bordenkircher* effectively overrules *Blackledge*. I cannot agree. Both of my colleagues fall into the trap of relying on hyperbole in the dissent in *Bordenkircher*. The danger of relying on Supreme Court dissents should be obvious. I would look to the language in the majority opinion in *Bordenkircher* which emphasizes the limited nature of the Court's holding. The Court spoke at length of plea bargaining and the idea that "there is no

such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." 434 U.S. at 363, 98 S.Ct. at 668. Indeed, the Court stated that "We hold only that the course of conduct engaged in by the prosecutor in this case which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." 434 U.S. at 365, 98 S.Ct. at 669.

*Bordenkircher* presents a case where the prosecutor acted vindictively, but where an independent factor—the defendant's ability to choose—eliminated any due process problems. The Court was careful to contrast the give and take of plea bargaining with the "unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right." 434 U.S. at 362, 98 S.Ct. at 667. It is unquestionably true that there exists tension between *Bordenkircher* and *Blackledge*. However, I would take Justice Stewart at his word and limit *Bordenkircher* to its facts pending further guidance from the Supreme Court.

Although Judge Merritt seems to think that I have misperceived *Bordenkircher*, I think that the opposite is true. No other court has advanced the view that *Bordenkircher* limits *Blackledge*. Some courts have not even bothered to cite *Bordenkircher* when discussing prosecutorial vindictiveness issues outside of the plea bargaining context, e. g., *Jackson v. Walker, supra*. Those courts which have cited *Bordenkircher* have advanced the view which I hold.

("... a very limited due process interest balanced against a moderately weighty prosecutorial independence interest.")

**17.** The government also argued that a defendant is so interested in getting out on bail that even a seemingly vindictive increase in charges would not deter the exercise of that right and that thus only a finding of actual vindictiveness should be required.

Given the complex and subjective nature of deterrence, it cannot be said that *no* deterrent effect results in situations such as this. In addition, there exists independent value to minimizing the perception of defendants—and the

public—that vindictive prosecutorial behavior takes place. Further, I do not see any significant difference between a defendant's interest in being released on bail and a defendant's interest in having his conviction reversed on appeal (*Pearce*) or securing a trial *de novo* (*Blackledge*).

**18.** The prosecutor in *Blackledge* did not try to justify his conduct. However, I do not think, that the Supreme Court would have ruled differently had the prosecutor advanced reasons such as inexperience or neglect.

*See United States v. Jones*, 587 F.2d 802, 805 n. 2 (5th Cir. 1978); *United States v. Groves*, 571 F.2d 450, 455 (9th Cir. 1978). *See also Watkins v. Solem*, 571 F.2d 435, 436 (8th Cir. 1978) (*Bordenkircher* holding "very narrow"). *See generally* Smaltz, *Due Process Limitations on Prosecutorial Discretion in Re-Charging Defendants* : Pearce *to* Blackledge *to* Bordenkircher, 36 Wash & Lee L.Rev. 347 (1979).

Instead of limiting *Bordenkircher* to its facts, as I would, my colleagues have seized upon that decision to limit *Blackledge* and *Pearce* to their facts. I think that my colleagues views are unsound, both as a matter of precedent and as a matter of public policy. Because their opinions are so different, I will discuss them separately.

### A.

Although Judge Green purports to adopt a balancing test similar to the one I advance or the one Judge Goldberg advanced

in *Jackson v. Walker, supra* ; in reality he does no such thing. Judge Green breaks down vindictiveness issues into three factual situations: 1) substitution of charges, 2) addition of charges in a crime spree situation, 3) addition of charges for the same basic criminal acts (the situation here). He would bar charges in situation # 1.[19] Regarding situations # 2 or # 3, however, he would mechanically apply a *prima-facie* vindictiveness test, and allow the government to rebut with glib explanations such as inadvertence or mistake in all cases.[20]

The problem with this approach is that it ignores *Blackledge's* underlying concern with the appearance of prosecutorial vindictiveness and concomitant chilling effect on defendants.[21] It simply gives too much deference to prosecutorial discretion in most situations and effectively limits *Blackledge* to its narrow facts.

Instead of making Judge Green's artificial distinctions, I would recognize the pros-

19. I agree with Judge Green that in situation # 1, where the government increased the severity of the charges arising from a single criminal act, *Blackledge* applies. Put in terms of the balancing test I advance, the appearance of vindictiveness is very strong and the government's interest is slight. I also agree with Judge Green that explanations such as inadvertence or neglect never can be sufficient to justify the government's conduct in such a situation. In such a situation, only new information or previous legal impossibility should justify increasing the charges.

20. Thus, although purporting to follow *Jackson v. Walker*, Judge Green, in reality, extends the lenient standard of *Hardwick v. Doolittle* to all fact situations involving the addition (as opposed to the substitution) of charges.

In contrast, I would extend the balancing test of *Jackson v. Walker*, to all situations. Under my suggested approach, a district court would balance the competing interest of the prosecutor and the defendant in all cases to arrive at one of two possible standards. Under the first standard, a prima-facie case of vindictiveness arises which can be easily offset if the prosecutor convinces the court that he really wasn't retaliating against the defendant. Explanations such as inadvertence or inexperience are fine. Under the alternate standard, as I phrased it, the government must offset any "appearance of vindictiveness." To do this, explanations such as inadvertence or inexperience are not fine. The only acceptable explanations are those advanced by the district court, lack of

knowledge on the government's part or legal impossibility. I thus propose a two-tiered standard. The first tier is identical to the standard used by the Fifth Circuit in *Hardwick*. The second tier is identical to the standard used by the Ninth Circuit. I would affirm the district court because application of the balancing test should result in application of the more severe standard, which the government cannot meet.

21. I fail to see why Judge Green is concerned by the phrase "appearance of vindictiveness." The fact that the Ninth Circuit cases with which Judge Green disagrees also use this expression should not make it unsuitable. (I note that this expression was also used in *Jackson*, 585 F.2d at 144). As I read *Pearce* and *Blackledge* they are concerned: 1) with forestalling prosecutorial behavior which is actually vindictive; 2) with ensuring that prosecutorial behavior which appears to be vindictive (even if it's really not) does not create an apprehension of vindictiveness which deters defendants from exercising their rights. The Supreme Court in *Blackledge* specifically used the phrase "apprehension" of vindictiveness. The phrase "appearance of vindictiveness" is useful because it serves to distinguish situations where actual vindictiveness occurred, as in *Bordenkircher*, from situations where no one claims that the prosecutor acted in bad faith. I see no real difference between that phrase and expressions such as "unexplained addition of charges," or the Supreme Court's language of defendants' "apprehension of vindictiveness."

ecutorial interest in situations # # 2 and 3 and weigh it against the defendant's interest in different fact settings. That is a true balancing test and gives proper weight to *both* defendants' and prosecutors' interests.

The facts of this case illustrate how tenuous Judge Green's distinctions really are. Because the prosecutor only added a conspiracy count, he allows the government to advance explanations such as inadvertence and neglect to rebut a prima facie case of vindictiveness. Had the prosecutor substituted a more severe charge, Judge Green would bar it. I do not think that this *per se* distinction is warranted. Instead, I would look to all of the circumstances. As I have previously indicated, what made the prosecutor's conduct so apparently vindictive here is the *timing* of the addition of charges, immediately after the government lost a hard-fought bail motion. It is the high chilling effect of this conduct which should result in a barring of the charge. In this case, whether the government substituted or added the charge is not very important. Yet, under Judge Green's view, it is dispositive.[22]

### B.

Judge Merritt's opinion is certainly unique. His position is that no matter why a prosecutor brings added charges, there is no problem of vindictiveness unless a second trial is implicated. Assume that a prosecutor openly threatens a defendant, in advance, with more charges if the defendant brings a motion for bail or exercises some other procedural right not involving a second trial. To Judge Merritt, why, this is nothing more than good old "regular prosecutorial hard nosedness."

Not only does Judge Merritt benignly approve "regular prosecutorial hard nosedness," he lives in deathly fear that to interfere with a prosecutor's decisionmaking is "unmanageable" and "unworkable." Judge Merritt's opinion accords almost mystical deference to prosecutorial discretion, yet advances no policy arguments to support this position. In my view, there are compelling reasons to reject it.

The only reason why prosecutorial vindictiveness problems exist in the first place is that the prosecutor's office bungled things. There is no reason why the defendants could not have been charged with all offenses from the very beginning.[23] Where a prosecutor makes a reasoned decision to bring certain charges in the beginning, there never exists any question of vindictiveness. It is only when a prosecutor starts adding charges later on that could have been brought earlier that vindictiveness questions arise. Since vindictiveness issues come up only if a prosecutor does not do his job right in the first place, I see no reason not to carefully examine them. To take the opposite approach (that of Judge Merritt) is to abdicate completely to prosecutorial discretion. I do not think that our system of criminal justice should tolerate the prosecutorial abuse which Judge Merritt's views would facilitate. A person may be prosecuted for many reasons, but he should never have to face added charges because he exercised his rights.

---

22. Curiously, Judge Green does not cite *United States v. McFadyen-Snider*, 590 F.2d 654 (6th Cir. 1979) where this court barred the bringing of a perjury indictment on a finding that it probably would not have been brought had the defendant not been successful in a separate appeal. Judge Green's narrow view of prosecutorial vindictiveness is difficult to reconcile with *McFadyen-Snider*. Also, I would accord no significance to the vague dicta in *United States v. Sturgill*, 563 F.2d 307, 309 (6th Cir. 1977).

23. Both Judge Green, ante at p. 241 n. 7 and Judge Pratt below, 444 F.Supp. at 1243 n. 4

have commented on the problem of prosecutorial overcharging as a possible consequence of stringent judicial views of vindictiveness questions. Ideally, a reasonable prosecutor, aware of his awesome charging authority, will make a careful judgment of what charges should be brought against a given defendant. Unfortunately, the reality of prosecutorial decisionmaking is far removed from this ideal scenario. Given the large amount of overcharging which goes on now, I see little danger that it will increase if we act firmly when dealing with vindictiveness issues.

Judge Merritt properly notes the serious problems which vindictiveness issues present for a prosecutor. Prosecutors are necessarily opposed to criminal defendants, and prosecutors make honest mistakes. Unlike Judge Merritt, I do not think that these problems are insurmountable. Nor do I think that we should shirk from our duty to police vindictiveness and apply ·clear· Supreme Court precedent.

I recognize the difficulties in dealing with actual fact situations such as this one.[24] I believe that a balancing test provides a good resolution of them. The irony is that the balancing test I advance recognizes the strong prosecutorial interests which underlie Judge Merritt's views. The difference is that it does not abdicate to these interests. The peculiar facts of this case are unique in that it is a rare instance where the balancing test results in the barring of additional charges brought before trial. In most such situations, the prosecutorial interest will be so strong and the appearance of vindictiveness so slight that the prosecutor would not be barred from bringing additional charges.

Judge Merritt would look to the double jeopardy clause for guidance and would extend *Bordenkircher* to all pre-trial situations.[25] The problem with this idea is that there exists no judicial support anywhere that I have seen for it. Indeed, both *Blackledge* and *Bordenkircher* specifically rely on the due process clause alone and do not speak of double jeopardy "values." I am of the view that prosecutorial vindictiveness encompasses far more than situations involving a second trial.

### V Conclusion

In conclusion, I would accord far greater scrutiny to prosecutorial vindictiveness questions than either of my colleagues. Judge Green's opinion is not unreasonable but allows prosecutors too much leeway. Judge Merritt's opinion is a simplistic over-reaction to a complex problem. It is unfortunate that he reaches the ostrich-like conclusion that because prosecutorial vindictiveness is difficult to police, it should be ignored whenever possible.

While each of the opinions in this case will doubtless be read with interest by prosecutors and defense counsel alike, neither they nor the district judges of the circuit will have definitive guidance. Given the chaotic nature of the law in the circuits regarding prosecutorial vindictiveness, we can expect further guidance on this question from the Supreme Court in the near future. It is regrettable that, until then, my colleagues have passed up an opportunity to impose needed controls on potentially abusive prosecutorial conduct.

---

**24.** Judge Merritt's rhetorical questions, I think, are answered in this dissent. A balancing test can weigh each of the factors he cites on either side of the plaintiff-defendant equation. I note once again that vindictiveness issues are only present if a prosecutor adds charges which he could have, but did not bring earlier. Any resultant problems, in effect, are of the prosecutor's own making.

**25.** Judge Merritt's suggested limitation of *Blackledge* to situations after the first trial is over is even a broader argument than that made by the government which would limit *Blackledge* to situations involving a trial or retrial. *See* n. 2, *supra.*