Billy Wayne MIRACLE,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Dept. of Corrections,
Respondent-Appellee.

No. 78–2110.

United States Court of Appeals,
Fifth Circuit.

April 10, 1979.

Ken G. Anderson, Staff Counsel for Inmates, Texas Dept. of Corr., Frank Blazek, Michael Tobin, Staff Counsel for Inmates, Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Joe B. Dibrell, David M. Kendall, Jr., Asst. Attys. Gen., Austin, Tex., W. Barton Boling, Asst. Attys. Gen., El Paso, Tex., Gilbert J. Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before GEWIN, GEE and RUBIN, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Billy Wayne Miracle was convicted by a jury of aggravated robbery with two convictions alleged for enhancement and given the mandatory sentence of life imprisonment. Miracle exhausted state remedies and pursuant to 28 U.S.C. § 2254, filed a habeas corpus application with the federal district court. Acting upon the United States magistrate's report and recommendation, the district court denied relief. On this appeal appellant claims the trial resulting in his conviction was the product of prosecutorial vindictiveness in violation of due process rights recognized in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).[1] Because we believe Miracle has made a sufficient claim of prosecutorial vindictiveness under *Blackledge* and this court's own decisions, we vacate the judgment of the district court and remand.

On May 24, 1974, Miracle was indicted in Cause 16,202 in the 108th District Court, Potter County, Texas for the second degree felony of robbery with one prior felony conviction charged for enhancement.[2] The indictment alleged that appellant perpetrated the offense upon Hal Brown on September 1, 1972. Under Texas law the charge carried a potential punishment of 5 to 99 years.[3] On October 16, 1974, a second grand jury impaneled in Potter County returned to the 47th District Court a true bill indicting Miracle for aggravated robbery, a first degree felony, with two felony convictions alleged for enhancement.[4] This in-

---

1. In *Blackledge* the district court granted defendant a writ of habeas corpus, finding a violation of his due process right against prosecutorial vindictiveness. On appeal, the Fourth Circuit Court of Appeals affirmed this judgment. In its ensuing opinion the Supreme Court affirmed the judgment of the Court of Appeals.

2. The indictment charged that the accused was convicted of theft in 1951.

3. Under Texas law, robbery as a second degree felony carries a potential punishment of 2 to 20 years. Tex.Penal Code Ann. tit. 3, § 12.33 (Vernon 1974). Under title 3, § 12.42, the Habitual Offender Statute, if it is shown at the trial of a second-degree felony that the defendant has once been convicted of any felony, on conviction he shall be sentenced to a term of not more than 99 years or less than 5 years, the punishment for first degree felony.

4. Aggravated robbery, as charged in Miracle's indictment, means the commission of a robbery with the use or exhibit of "a deadly weapon." Tex.Penal Code Ann. tit. 7, § 29.03 (Vernon 1974).

The two alleged enhancement offenses included the 1951 felony conviction charged in Cause 16,202 and a 1966 robbery conviction.

dictment, styled 16,365–A, was based on the same September 1, 1972 robbery of Hal Brown. Because of the two enhancement convictions, the charge in 16,365–A carried an automatic punishment of life imprisonment.

After both indictments were returned, the prosecutor chose to proceed to trial in the 47th District Court on Cause 16,202, the robbery charge carrying a potential 5–99 year punishment. In a bifurcated trial the jury found Miracle guilty, and at the sentencing stage determined that he previously had been convicted of the enhancement felony and sentenced him to 99 years imprisonment. Shortly thereafter appellant filed a motion for a new trial on grounds of jury misconduct. At a hearing on the motion, the trial judge found that the jury had discussed during deliberations appellant's potential status under the state's parole laws. The court therefore granted Miracle a new trial.

The state prosecutor who tried Miracle elected to retry him on 16,365–A, the aggravated robbery-two enhancement felony charge. At the conclusion of appellant's trial on 16,365–A, the jury found him guilty and subsequently concluded that he had been convicted twice of felony offenses. Accordingly, the trial judge sentenced Miracle to life imprisonment as required by law.[5]

■ This court's appraisal of appellant's claim of prosecutorial vindictiveness must adhere to the principles established by the Supreme Court in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and developed by this Circuit in *Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir.

1977) and *Jackson v. Walker*, 585 F.2d 139 (5th Cir. 1978). *Blackledge* and its progeny make clear that the substantial discretion traditionally accorded state prosecutors in bringing defendants to trial on criminal charges is subject to the due process guarantees of the Fourteenth Amendment. Moreover, the decisions hold that when an accused is convicted and successfully exercises his statutory or constitutional rights to obtain direct or collateral relief from the conviction, a state may not marshal more numerous or severe charges against the defendant in order to punish him for availing himself of appropriate remedies or discourage future defendants from a similar exercise of their rights.[6] *Blackledge, supra* 417 U.S. at 27–28, 94 S.Ct. 2098; *Jackson, supra* at 142–43; *Hardwick, supra* at 301. As the Supreme Court stated in *Blackledge*:

> A person convicted of an offense is entitled to pursue his statutory right . . ., without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. (citation omitted).

417 U.S. at 28, 94 S.Ct. at 2102, 2103.

■ The advancement of a prosecutorial vindictiveness claim brings into conflict two antithetical interests: (1) the due process right of the defendant to be free of apprehension that the state might subject him to an increased potential punishment if he exercises his right to make a direct or collateral attack on his conviction, and (2) the prosecutor's broad discretion to control the decision to prosecute. *Jackson, supra* at 143;

---

5. On May 23, 1974 appellant was indicted in Causes 16,009–A and 16,203 for robberies unrelated to the robbery alleged in 16,202 and 16,-365–A. Prior to his conviction for aggravated robbery in 16,365–A, Miracle was tried and convicted for the robbery charged in 16,203. He subsequently obtained a new trial, however, and after securing conviction in 16,365–A, the state dismissed the indictments in 16,009–A, 16,202 and 16,203.

6. The Supreme Court has never held that states are constitutionally required to provide a right to appellate review. *E. g., Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891

(1955). Nevertheless, it is now a fundamental principle of due process and equal protection that once avenues of appellate review are established, they must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Chaffin v. Stynchcombe*, 412 U.S. 17, 24 n.11, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *North Carolina v. Pearce*, 395 U.S. 711, 724–725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Rinaldi v. Yeager*, 384 U.S. 305, 310–11, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *see Douglas v. California*, 372 U.S. 353, 356–57, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

*Hardwick, supra* at 301. Because of the societal importance of both policies, the actual showing an accused must make to establish a due process violation depends on a careful balancing of the defendant's interest against that of the state. *Jackson, supra* at 145. A court must "weigh the extent to which allowing the second [prosecution of the defendant] will chill the exercise of the defendants' appeal rights against the extent to which forbidding the second [prosecution] will infringe on the exercise of the prosecutor's independent discretion." 585 F.2d at 145.

Employing this calculus in *Blackledge*, the Supreme Court found from the circumstances that the interest of the State was completely overborne by the defendant's right to be free of the fear of vindictiveness. The Court therefore held that a due process violation was established by the accused's showing that his second prosecution posed a "reasonable likelihood of vindictiveness", creating an apprehension in future defendants that the state would retaliate against their exercise of constitutional or statutory rights.[7] No actual vindictiveness or retaliation motive was required to be shown.

*Blackledge* involved a defendant convicted in a state district court of assault with a deadly weapon, a misdemeanor, and sentenced to six months. After his conviction, the defendant exercised his statutory right to obtain a trial de novo in state Superior Court. Prior to this trial, the prosecution secured a superseding indictment charging the accused with the felony of assault with intent to kill and inflict serious bodily injury. The indictment covered the same conduct for which the defendant was convicted in the district court. After pleading guilty to the new indictment, he was sentenced to five to seven months imprisonment.

The Supreme Court recognized that the felony indictment was a more severe charge because of the potential increase in punishment. 417 U.S. at 27–28, 94 S.Ct. 2098. As a result other defendants might perceive the charge as a retaliatory measure for the exercise of the right to appeal. At the same time, the indictment did not represent an initial decision by the prosecutor to bring charges for separate criminal acts. It was merely a substitution of a more severe charge for the same conduct, a "harsher [variation] of the same original decision to prosecute." *Hardwick, supra* at 302. There being no other crimes, the prosecutorial interest in discretion was slight, and under these circumstances, the Supreme Court held the defendant's showing of a reasonable apprehension of vindictiveness sufficed to render the indictment constitutionally deficient.[8]

In *Hardwick* and *Jackson*, however, this court concluded from the factual settings of the cases that the prosecutorial interest in broad discretion outweighed the countervailing due process interest. Accordingly,

---

**7.** We noted in *Jackson* that there exist at least two reasons for this rule.

First, it is difficult to prove in court the actual state of mind of a prosecutor during his exercise of discretion. And second, [prosecutions] that look vindictive, even though they are not may still make future defendants so apprehensive about the vindictiveness of prosecutors that they will be deterred from appealing their convictions.

585 F.2d at 143.

**8.** The Court expressed its reasoning as follows:

[T]he Due Process clause is not offended by all possibilities of increased punishment . . . but only those that pose a realistic likelihood of 'vindictiveness' . . . . And, if the prosecutor has the means readily at hand to discourage such appeals-by "upping the ante" through a felony indictment whenever a con-

victed misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a de novo trial. There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment . . . ., however, [is] not [grounded] upon the proposition that actual retaliatory motivation must inevitably exist. Rather, . . . 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the [prosecutor].'

417 U.S. at 27–28, 94 S.Ct. at 2102.

we held that a mere claim of apprehension of vindictiveness, without a determination of actual vindictiveness, established only prima facie proof of a due process violation. *Jackson, supra* at 148–49; *Hardwick, supra* at 302–03. The burden was shifted to the state to prove that the prosecutor's motive was not vindictive. *Id.*

Unlike *Blackledge, Hardwick* involved the reindictment and retrial of an accused on criminal conduct not alleged in the original indictment. The defendant was initially indicted, tried and convicted of bank robbery and assault of a policeman. After a successful appeal of the conviction, but before his second trial, the state obtained another indictment adding two distinct criminal acts, robbery of a bank customer and a second assault. The *Hardwick* court held that the state's interest in having the freedom to initiate prosecution for these distinct offenses was superior to the defendant's interest. *A fortiori,* the court concluded that the prosecutor was entitled to the opportunity to explain the second prosecution, which on its face appeared vindictive.

Similarly, in *Jackson* the accused was also retried for a different offense, aggravated burglary, after the reversal of his conviction for aggravated kidnapping. Moreover, the aggravated burglary charge was a lesser offense. While aggravated kidnapping carried a maximum sentence of life imprisonment, the maximum sentence for aggravated burglary was 30 years.[9] The prosecution of the accused on a less serious charge minimized the likelihood of vindictiveness. Consequently, the defendant's interest was significantly outweighed by the state's interest in the liberty to retry defendant for distinct criminal behavior, and the court remanded the case to the district court to permit the state to prove the prosecution was not conceived in vindictiveness.

█ Before this court applies this balancing equation to the instant case, we must consider the state's argument that the *Blackledge* doctrine is inapplicable to the prosecution in 16,365–A. The State of Texas contends there was no prosecutorial vindictiveness under *Blackledge* because the challenged indictment in 16,365–A was returned before Miracle's trial on 16,202 and was pending at the time he exercised the right to attack his conviction. Hence, the prosecution in 16,365–A could not have been motivated by retaliation. We believe appellee reads *Blackledge* too narrowly. Due process not only proscribes vindictive indictments, it also protects against vindictive prosecutions.

Admittedly, *Blackledge* and *Hardwick* each involved a factual sequence of indictment, conviction, successful appeal, reindictment on a harsher charge, and conviction. But the major evil with which *Blackledge* is concerned, is a vindictive prosecu-

9. The second indictment was harsher "in a technical sense" than the first. The first indictment alleged aggravated kidnapping carrying a maximum sentence of life imprisonment, armed robbery with a maximum of 99 years and conspiracy to kidnap with a 20 year maximum. The second indictment charged aggravated kidnapping, armed robbery, and aggravated robbery with a 30 year charge. On its face, the second prosecution appeared to substitute a 30 year aggravated robbery charge for the 20 year conspiracy to kidnap charge. However, the accused was initially tried for aggravated kidnapping carrying a maximum life sentence. On retrial, the state proceeded against him solely on the aggravated robbery count with its 30 year maximum sentence. Thus, the panel found the second prosecution, in actuality, to be less severe, though the indictment on its face established a prima facie showing of vindictiveness.

[S]ince the chief concern is the apprehension of vindictiveness, it is important to look at which charges the prosecutor chooses for actual prosecution. Indicting a defendant on a charge no doubt threatens a defendant with prosecution on that charge . . . But in examining a record for *Blackledge* violations, our principal concern must of course be with charges on which the defendant was actually tried. Had the prosecutor here tried Jackson for a relatively minor charge at first, and then, after a successful appeal, retried her on a more severe charge, we would be more ready to suspect unconstitutional retaliation, . . . But in this case the second charge chosen for prosecution was less harsh than the first charge prosecuted.
585 F.2d at 147.

tion and trial of an accused on more severe or numerous charges after the defendant has exercised a constitutional or statutory right. Obviously it is primarily the trial and conviction on the harsher charges which may place other defendants in fear of reprisal and deter future challenges of convictions.[10] For at these stages of the prosecution the specter of receiving a more exacting penalty for the same crime becomes a stark reality. Therefore, *Blackledge's* principles apply to the peculiar circumstances of this case, where Miracle was twice indicted in different state courts for the same offense, he was tried on one indictment, he successfully attacked his conviction, and the prosecutor chose to retry him on the second indictment. The question for this court is whether the second prosecution was barred by *Blackledge*.

Having determined our rules on prosecutorial vindictiveness govern the instant case, we must canvass the competing policies, beginning with the defendant's interest in minimizing the apprehension of prosecutorial vindictiveness. We are mindful that *sine qua non* of a prosecutorial vindictiveness claim is that the second charge is a fact harsher than the first.[11] *Jackson,* 585 F.2d at 146. Normally, before a second prosecution can give rise to the appearance of vindictiveness required by *Blackledge,* it must be founded on charges more serious than those alleged in the original prosecution. The state argues, however, that the charge in 16,365–A was not in fact a harsher charge because Miracle received the same punishment, life imprisonment, for both charges,[12] and under either life sentence he will be eligible for parole after twenty years.

10. Of course, an indictment of an accused on a harsher charge may constitute a retaliatory action in violation of *Blackledge,* even though the defendant is not tried on the charge. *Jackson, supra* at 147.

11. However, as the *Jackson* panel pointed out, prosecutorial vindictiveness may exist when the second prosecution is *not* founded on harsher charges. 585 F.2d at 146 n.12. Vindictiveness in this circumstance violates due process not because the right to challenge a crimi-

We are convinced that the aggravated robbery offense for which Miracle was retried constituted a more severe offense. The state's approach flies in the fact of our decisions. In *Hardwick* the defendant received a life sentence and a ten year sentence, to be served consecutively, for the two crimes alleged in his first trial. Following his subsequent conviction under the indictment alleging two additional offenses, he was given two life sentences and two ten year terms. The state contended that the sentence under the second indictment was not harsher since under either sentence he would be eligible for parole at the same time.

We rejected this focus on the end result, stating:

> This [approach] blinks reality. We cannot assume that a parole board would consider a prisoner with four felony convictions in the same light as a prisoner with two felony convictions, and in any event Hardwick's "potential period of incarceration" *Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), has been doubled.

558 F.2d at 300. Likewise, this court will not determine the severity of the offenses here by speculation on whether the Texas Parole Board would view a prisoner with an aggravated robbery conviction plus two enhancement convictions in the same light as a prisoner convicted for robbery with one enhancement conviction.

Moreover, *Hardwick* and *Blackledge* indicate that the severity of an alleged offense is not determined by the actual punishment imposed but by the potential punishment for the offense, viewed prospectively. This rule was well articulated by the D. C. Cir-

nal conviction is chilled, but because vindictiveness is always an illegitimate consideration in prosecutorial decision making. In this context, an accused must show actual vindictiveness to establish a due process violation and not merely the appearance thereof.

12. The state claims there is no difference between the 99 year sentence assessed in 16,202 and the sentence of life imprisonment imposed in 16,365–A.

cuit in *United States v. Jamison,* 164 U.S. App.D.C. 300, 505 F.2d 407 (1974). In that case two defendants were indicted for second degree murder carrying a possible punishment range of twenty years to life imprisonment. During their trial, defendants requested and received a mistrial. Thereafter the prosecution had them reindicted and tried for first degree murder, carrying a mandatory life sentence. Both prosecutions were founded on the same criminal episode. The *Jamison* court determined that the first-degree murder prosecution violated *Blackledge* because it encompassed a harsher charge and might thereby create an apprehension of vindictiveness. In reaching its conclusion, the court concentrated on the fact that the defendants potentially could receive a harsher sentence for first-degree murder.

> [W]e find ample difference [in severity] in terms of length of sentence alone between second and first degree murder. It hardly seems an empty threat [to other defendants] that the crime with which one is charged may be increased from one carrying a sentence of "life or not less than twenty years," the prescribed sentence for second degree murder, to one carrying a mandatory life sentence, the prescribed sentence for first degree murder. The fact that in a particular case the *actual impact* on the defendant of a charge increase is slight is, of course, not determinative  . . . . (Emphasis ours)

164 U.S.App.D.C. at 308, 505 F.2d at 415.

In the case at bar Miracle was initially tried in 16,202 for robbery with one enhancement conviction, carrying a potential punishment of 5 years to life. The State then retried him in 16,365–A for aggravated robbery plus two enhancement convictions. In doing so, the prosecution increased the severity of the original offense in at least two different ways. First, it changed the primary offense in the second indictment from robbery, a second degree felony, to aggravated robbery, a first degree felony. When joined with one en-

hancement conviction, aggravated robbery authorizes a potential punishment of 15 to 99 years imprisonment,[13] as compared to the potential 5–99 year sentence carried by robbery with one enhancement felony. The aggravated robbery charge was harsher because it would expose Miracle to a minimum 15 year sentence while under the robbery charge he could potentially receive as few as five years.

The State of Texas further increased the charge by adding an additional enhancement conviction. The resulting indictment removed from the jury all discretion to assess a sentence as low as five years and required the accused, as a habitual felon, to be given life imprisonment. Given the vast difference between potential sentences under the two charges, it ignores reality to contend that 16,365–A did not constitute a more serious offense. Being founded on a harsher charge, the indictment and trial in 16,365–A may have created within other defendants a real apprehension of prosecutorial vindictiveness. For this reason, the accused's interest is a substantial one.

▮▮▮▮ Arrayed against appellant's due process right is a prosecutorial interest resembling in weight that in *Blackledge.* As in *Blackledge,* both prosecutions were directed at the same criminal act, the September 1, 1972 robbery of Hal Brown. In the instant case the second prosecution represents a substitution of a more severe charge, aggravated robbery with an additional enhancement felony, for the same criminal offense, a reopening of the original decision to prosecute Miracle for the robbery. Missing from the prosecution in 16,-365–A is a new decision or act of discretion by the state attorney to initiate charges against Miracle for distinct criminal acts. This adopting of a "different approach to prosecutorial duty" is a critical facet of prosecutorial freedom, and its presence in *Hardwick* and *Jackson* tipped the scales in favor of the prosecution. Conversely, its absence here, as in *Blackledge,* appears to diminish the state's interest.

---

**13.** Tex.Penal Code Ann., tit. 3, § 12.42(c) (Vernon 1974).

Moreover, at no time during these proceedings has the state offered an explanation for "upping the ante" against Miracle. This silence lends some weight to Miracle's contention that the only likely motive was vindictiveness.[14] The state's substitution of charges for the same offense and its failure to explain such action tends to render the interest in noninterference with prosecutorial discretion minimal and subordinate to the defendant's right to noninterference with his efforts to secure post-conviction relief.

Because the constitutional policy to avert vindictiveness is a valuable constitutional right, Miracle's claim of a reasonable apprehension of retaliation was sufficient to raise the issue of a due process violation under *Blackledge*. Consequently, the state may not reindict or retry Miracle on a charge carrying a potentially greater punishment than 5 years to 99 years.

We vacate and remand for appropriate action consistent with this opinion.

VACATED and REMANDED.

---

**14.** The court in *Hardwick* described several possible grounds for justifying increased charges.

> An increase in the severity or number of charges if done without vindictiveness may be easily explained. For example, evidence of the additional crimes may not have been obtained until after the first indictment or information is filed, or the additional crime may not be complete at the time charges are first brought. And a prosecutor may, without explanation, refile charges against a defendant whose bargained-for guilty plea to a lesser charge has been withdrawn or overturned on appeal, provided that an increase in the charges is within the limits set by the original indictment. Other explanations which would negate vindictiveness could include mistake or oversight in the initial action, a different approach to prosecutorial duty by the successor prosecutor, or public demand for prosecution on the additional crimes allegedly committed. The list is intended to be illustrative rather than exhaustive.

558 F.2d at 301.

When the state adds on additional enhancement convictions, these may be explained by the fact that the prosecutor only learned of them after the first conviction. Of course, in the instant case this would not explain the increase in the primary offense.