NO. 07-02-0524-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 23, 2004

_____

DENNIS HOOD, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 45,506-B; HON. JOHN BOARD, PRESIDING

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

In this appeal, appellant Dennis Hood seeks reversal of his conviction of aggravated sexual assault of a child under the age of 14 years. The punishment, enhanced by two previous felony convictions, was assessed at life imprisonment in the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID). In seeking reversal, appellant

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

advances two points for our decision. In his first point, he argues he is entitled to reversal because other charges were added after the reversal of his first conviction of this offense. In his second point, he asserts the evidence is factually insufficient to support the verdict of the jury. Disagreeing that reversal is required, we affirm the judgment of the trial court.

## Procedural History

Appellant was originally indicted by a Potter County grand jury on November 17, 1994, for the offense of aggravated sexual assault of a child under the age of 14 years. The case proceeded to trial under that indictment, and appellant was convicted with his punishment being assessed at 65 years confinement in the TDCJ-ID. Upon appeal to this court, the conviction was reversed and the cause remanded for new trial. *See Hood v. State,* 944 S.W.2d 743 (Tex. App.–Amarillo 1997, no pet.). On June 25, 2002,[2] the State obtained a re-indictment for the offense with the addition of two allegations concerning appellant's previous convictions of felony offenses. If those additional allegations were found to be true by the trial jury, as they were, the punishment ranges were increased from a potential penal punishment for life or any term of not more than 99 years or less than five years to penal confinement for life or for any term of not more than 99 years or less than 25 years. *See* Tex. Pen. Code Ann. §§12.32 and 12.42(d) (Vernon 2003 and Vernon Supp. 2004). It is the addition of the allegations concerning appellant's prior convictions that give rise to his claim of prosecutorial vindictiveness presented in his first point.

---

[2]Appellant was actually re-indicted on July 2, 1997, with the addition of the punishment enhancing paragraphs. However, that indictment contained some technical errors leading to the second re-indictment on June 25, 2002.

Factual History

The nature of appellant's challenges requires us to recount relevant portions of the evidence. Lekelia Shaw, the complainant, testified that she was born on February 10, 1981. In mid-July 1994, she lived in a household consisting of herself, her mother Jamie Shaw, her three-year-old brother Chad, her cousin Kristie Titus, and Kristie's friend LaShawn Moore. Appellant was a friend of Kristie whom Lekelia met shortly after Kristie moved into the Shaw residence. He became a daily visitor to the household.

On the day of the occurrence, Lekelia said she was in her mother's room talking on the telephone when appellant suddenly appeared and started fondling her breasts. Lekelia told appellant to stop, told the person to whom she was talking on the telephone she would call back, and hung up the telephone. She then went to her bedroom with appellant following her. Appellant ordered her to remove her T-shirt and when she refused to do so, he tore the shirt down the middle. He then pulled down her shorts, pulled his jeans and undershorts to his knees, pushed her onto the bed, and as she tried to push him away, got on top of her and sexually assaulted her.

After the assault, she averred, appellant threatened to "whip her ass" if she told anyone about the assault. He went to the living room, briefly tried to make conversation, and left. Lekelia then threw her torn T-shirt into the dumpster, and took a prolonged bath in which she stayed until her mother returned. She testified that appellant penetrated her vagina and she was not married to him at the time.

3

Lekelia admitted she did not report the occurrence until October 4, 1994; however, she said, that delay was because she was afraid of her mother's reaction. On October 4, 1994, her mother and Kristie got into an argument about Lekelia wearing Kristie's clothes. In the course of that argument, Kristie made a remark about Lekelia being fat, to which Lekelia responded that Kristie's friend, appellant, apparently did not think she was fat because he had raped her. Her mother then questioned Lekelia about the rape and summoned the police. The police interviewed Lekelia, took a written statement from her, and she underwent a sexual assault exam at the hospital.

Lekelia admitted that she had possibly had a prior sexual experience with a 14-year-old-boy on St. Patrick's Day 1994. They were both naked and she believed they had sex but "she didn't feel anything." She admitted that she had not told the police investigator about that possible sexual encounter because her mother was present at the time and she was afraid of her mother's reaction.

Sexual assault nurse examiner Becky O'Neal testified that she performed a sexual assault examination of Lekelia. She found two well-healed two millimeter tears to Lekelia's hymen at the four o'clock and six o'clock positions which could have occurred as a result of consensual or non-consensual sex. She could not determine when the tears occurred.

Jamie Shaw, Lekelia's mother, testified that Lekelia stayed at home while Jamie worked and Chad was placed in day care. She said the October 4, 1994 argument between Lekelia and LaShawn was about clothes and she called the police as the result of a statement made during the argument. She admitted that she had previously testified

4

that the argument between them was when she told LaShawn that she was going to have to move out but, she averred, this argument occurred after the one over the clothes. Jamie also testified that Lekelia's behavior changed after mid-July 1994. Lekelia had been out-going prior to that time but after the incident, she wanted to be alone and spent long periods in the bathroom.

Kristie Titus, who graduated from high school on June 1, 1996, testified that she had lived with Jamie Shaw, who was her aunt. She said that LaShawn was her best friend. She averred that the October 4, 1994 argument was not about clothes because she could not wear Lekelia's clothes. Rather, she said, the argument was the result of Kristie telling Shaw that she and LaShawn saw Lekelia in a parked car possibly having sex. Shaw began yelling at Lekelia, and Lekelia replied that she had not told her "about the time [appellant] raped me." It was then that discussion of the incident with Lekelia was dropped and their attention diverted to the sexual assault incident.

Terry McCarthy, the safety director for Plains Transportation, testified that according to their records, appellant was driving a truck between Weatherford, Oklahoma, and Plainview and Amarillo until 4:45 p.m. on the date of the alleged occurrence. LaShawn Moore averred that the October argument began because Kristie reported to Shaw that she had seen Lekelia and a boy in a parked car with the windows steamed up. It was then that Lekelia retorted that she "didn't say nothing when [appellant] raped [her]." Appellant took the stand and testified that he did not rape Lekelia, fondle her breasts, have sexual contact with her, threaten her, throw her on the bed, or tear her clothing.

Discussion of Prosecutorial Vindictiveness Point

The State initially responds to appellant's claim of prosecutorial vindictiveness by arguing that the question was not properly preserved for our review. In doing so, it points out that the procedural history of this case shows that appellant alternately opted between representing himself and having counsel do so. The clerk's record reveals that appellant had filed a pro se motion to quash the trial indictment because of prosecutorial vindictiveness in including the prior conviction allegation. The record is not clear whether the motion was filed at a time when appellant was representing himself or when he was represented by counsel. However, in considering the motion, the trial court posited it was filed at a time when appellant was not represented by counsel. The gist of the State's argument is that there is no right to hybrid representation and once an appellant has retained an attorney, the trial court is entitled to look solely to the attorney and is not required to consider pro se motions. In advancing that proposition, appellant relies upon the holdings in *Ashcraft v. State,* 900 S.W.2d 817, 831 (Tex. App.–Corpus Christi 1995, pet. ref'd), and *Busselman v. State*, 713 S.W.2d 711, 714 (Tex. App.–Houston [1st Dist.] 1986, no pet.).

However, we believe the correct rationale in considering such matters is that applied by the court in *Meyer v. State*, 27 S.W.3d 644 (Tex. App.–Waco, 2000, pet. ref'd). In that case, the court opined that although a defendant does not have a *right* to hybrid representation, in the exercise of its discretion, the trial court may allow him to do so. *Id.* at 648. Thus, by considering and ruling upon a pro se motion, the trial court has essentially

6

allowed the defendant hybrid representation upon that one motion. *Id.* Therefore, when the trial court did so, the motion that was filed pro se by the defendant was valid and as effective as any other motion filed by an attorney. It is true that the trial court was not *required* to consider the motion, but when it did so, its ruling became subject to review upon appeal. Thus, even assuming *arguendo* that appellant was represented by counsel at the time he filed his pro se motion, that fact would not change our ruling. We must, therefore, consider the merits of this point.

The seminal case in the area of unconstitutional judicial vindictiveness was the Supreme Court's decision in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072*,* 23 L.Ed.2d 656 (1969). In that case, reasoning that to hold otherwise might unconstitutionally deter a defendant's exercise of his right to appeal or collaterally attack his first conviction, the Court held vindictiveness against a defendant for having successfully challenged his first conviction must play no part in the sentence he receives after a new trial. *Id.* 395 U.S. at 725, 89 S.Ct. at 2080.

The leading case involving prosecutorial vindictiveness is *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In that case, the defendant was convicted of a misdemeanor by a North Carolina state court. After he exercised his right to a trial *de novo* in a higher court, the prosecutor obtained a superseding indictment charging the defendant with a felony rather than a misdemeanor. Both the original misdemeanor (assault with a deadly weapon) and the subsequent felony were based upon the same fight between the defendant and a fellow prisoner. Considering these underlying facts, the

7

Court held that the *Pearce* principle applied to prosecutorial as well as judicial vindictiveness and that it was not constitutionally permissible to respond to a defendant's invocation of his right to appeal by bringing a more serious charge against him. *Id.* 417 U.S. at 28-29, 94 S.Ct. at 2103.

In *Hardwick v. Doolittle,* 558 F.2d 292, 302 (5th Cir. 1977)*, cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978),  the court's discussion is helpful in considering our case.  As material here, in that case, the appellant and a co-defendant were originally indicted on one count of armed robbery and one count of aggravated assault, and they both were convicted.  Upon appeal, appellant's conviction was reversed and the cause remanded for retrial.  Subsequent to the remand, the prosecutor obtained a superseding indictment charging appellant alone with two counts of armed robbery and two counts of aggravated assault.  He was convicted on all counts.  The issue of unconstitutional prosecutorial vindictiveness in obtaining the second indictment was presented in the appeal.  In its opinion, the court had occasion to discuss and explicate the meaning of the *Blackledge* reference to unconstitutional prosecutorial vindictiveness.  In considering that question, the court noted the collateral principle that there is a broad ambit to prosecutorial discretion, most of which is not subject to judicial control.  *Id*. at 301.  In balancing the two principles, the court opined that the teaching of the *Blackledge* decision in regard to unconstitutional prosecutorial vindictiveness was that once a prosecutor exercises his discretion to bring charges against a defendant, neither he nor his successor may increase the number or severity of those charges in circumstances that suggest the increase was

8

made in retaliation for the defendant's invocation of statutory or constitutional rights. *Id.* However, it noted, a broad and uniform application of that principle would negate a prosecutor's discretion in every case in which a defendant was initially indicted for less than all the violations that his alleged spree of activity would permit. Therefore, the court explicated that if a prosecutor can show he did not in fact act vindictively, a change would not violate the *Pearce* principle*. Id.* at 302*.* The court did not discuss what type of proof would suffice to demonstrate the absence of unconstitutional vindictiveness. In *Alvarez v. State*, 536 S.W.2d 357 (Tex. Crim. App.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292 (1976), the court, in considering the question of prosecutorial vindictiveness, opined, "[v]indictiveness is the evil object of *North Carolina v. Pearce*, and it is equally impermissible whether flowing from a judge or a prosecutor." *Id.* at 364.

The principle to be distilled from these cases is that in a cause in which a re-indictment is obtained after a reversal and remand, in order to avoid a *Pearce* problem, the burden is upon the prosecutor to show that the re-indictment was obtained for some reason other than prosecutorial vindictiveness. Whether the re-indictment was obtained for some reason other than vindictiveness because of a successful appeal must, of necessity, be determined on a case-by-case basis.

In addition to the cases we have discussed, in urging reversal is required, appellant cites and relies upon the decision of the Court of Criminal Appeals in *Bouie v. State*, 565 S.W.2d 543 (Tex. Crim. App. 1978), and the rationale the court applied in *Miracle v. Estelle,* 592 F.2d 1269 *(*5th Cir. 1979). In *Bouie,* the facts were somewhat similar to those

before us. The defendant was originally indicted for robbery by assault and a single prior conviction alleged for enhancement. Bouie originally pled guilty and the State abandoned the enhancement paragraph. On appeal, the conviction was reversed. The State then obtained a new indictment which contained two enhancement paragraphs. The defendant again entered a guilty plea and, at the trial level, unsuccessfully sought dismissal of the enhancement allegations. There was nothing in the record showing any explanation by the State for the addition of the two enhancement allegations.

In considering the question of prosecutorial vindictiveness, the court opined that in view of the "absence of objective information about identifiable conduct by appellant occurring after the first trial," "due process was violated by use of the enhancement paragraphs" in the indictment to increase the potential punishment and remanded the cause for a new punishment hearing. *Bouie v. State,* 565 S.W.2d at 547. By its comment, the court significantly noted the absence of any attempt by the State to justify laying a basis for increased punishment other than the appellant's appeal and reversal of the first conviction.

In *Miracle v. Estelle*, the State had secured from different grand juries two indictments based upon the same conduct. One of those indictments was for robbery, with one prior conviction alleged for enhancement, and the other was for aggravated robbery, with two enhancement paragraphs. The defendant was originally convicted upon the robbery indictment. After the first conviction was reversed on appeal, the State elected to proceed under the aggravated robbery indictment. In considering the question of

10

vindictiveness, the court noted that by its action, the State had changed a prosecution that called for a five year minimum punishment to one that would potentially result in a 15 year minimum punishment. In considering this, the court held that because the State offered no explanation for "upping the ante" against the defendant, the State could not re-indict or re-try the defendant on the aggravated robbery charge. *Miracle v. Estelle,* 592 F.2d at 1277. However, on remand to the state court, the Court of Criminal Appeals refused to set aside the second, more serious, aggravated robbery indictment because, it said, "[t]he opinion in *Miracle v. Estelle . . .* is chock full of factual misstatements and some misconceptions of the Texas substantive law applicable to the case before it." *See Miracle v. State,* 604 S.W.2d 120, 125 (Tex. Crim. App. 1980.)

We remain convinced that if the State can make some reasonable explanation for re-indictment other than vindictiveness, the *Pearce* rationale is satisfied and reversal is not required. For example, in *Raetzsch v. State,* 709 S.W.2d 39, 41 (Tex. App.–Corpus Christi 1986, pet. ref'd), the prosecutor explained that her failure to allege a prior conviction in an earlier indictment that resulted in a reversed conviction was because of what she thought was an inadequate pen packet and, by the time of a re-indictment, she had received a proper pen packet. The court held that the presumption of vindictiveness need not be applied in that case because "the circumstances of retrial were explained by the prosecution and do not indicate to us vindictiveness." *Id.* at 41.

In this case, the prosecutor, who was not the prosecutor in the first indictment, gave an uncontroverted explanation to the trial court that, as a result of her research and trial

preparation, she discovered that the intent had been to include the enhancement paragraphs before and "it was an omission from the very first indictment and should have been charged from the beginning." This explanation is similar to the one held sufficient in the *Raetzsch case.* We cannot say that the trial court abused its discretion in deciding that the explanation was sufficient to overcome any presumption of vindictiveness. Appellant's first point is overruled.

Reiterated, in appellant's second point he asserts the evidence is factually insufficient to support the verdict. The standards by which we conduct our factual sufficiency review are now so well established as to be axiomatic. Suffice it to say, our task is to peruse the whole record and consider whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Hall v. State*, 970 S.W.2d 137, 140 (Tex. App.–Amarillo 1998, pet. ref'd). In defining when the scale is tilted to the extent requiring reversal, the *Clewis* court invoked such descriptive terms as "shocks the conscience" and "clearly demonstrates bias." *Clewis v. State*, 922 S.W.2d at 135. In conducting our factual review, it is also axiomatic that we defer to the jury's resolution of factual disputes. That is, the power to reasonably infer facts from the evidence to resolve credibility issues and determine what testimony is credible is not ours, but the jury's. *Depauw v. State*, 658 S.W.2d 628, 633-34 (Tex. App.–Amarillo 1983, pet. ref'd).

To support his contention of factual insufficiency, appellant cites various instances of inconsistencies in the victim's testimony at this trial and at the earlier trial some eight

12

years previously. He also cites the testimony of the safety director of Plains Transportation, appellant's employer at the time, that driver's logs showed appellant was out of town at the time of the incident and appellant's denial that the occurrence ever happened.

However, notwithstanding any inconsistencies that may have existed in her testimony, the victim did not equivocate in testifying that appellant committed the offense, and the physical evidence was consistent with her testimony, as was the testimony that her mental condition (she became withdrawn) changed after the date of the occurrence. The testimony of a victim, standing alone, even if the victim is a child, is sufficient to support a conviction for sexual assault. *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.–San Antonio 1994, pet. ref'd); *see and compare Blackmon v. State*, 80 S.W.3d 103, 105-06 (Tex. App.–Texarkana 2002, pet. ref'd) (evidence was sufficient notwithstanding the 12- year-old victim made some inconsistent statements when she testified that the accused committed the offense, her outcry substantially conformed to her testimony, and medical findings were consistent with that testimony); *Lange v. State*, 57 S.W.3d 458, 461-65 (Tex. App.–Amarillo 2001, pet. ref'd) (evidence was sufficient despite delayed outcry, inconsistencies in the victim's description of the incident, and some evidence of a motive for fabrication, when medical evidence showed attenuation of her hymen consistent with the victim's testimony); *Orona v. State*, 836 S.W.2d 319, 322 (Tex. App.–Austin 1992, no pet.) (although there were some conflicts in the evidence, it was sufficient where the victim testified that the accused penetrated her anus with his penis and a pediatrician testified about a fissure on the victim's rectum consistent with penetration). Appellant's second point is overruled.

In summary, both of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.