NO. 07-04-0310-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 7, 2004



______________________________




NOBLE CONSTRUCTION EQUIPMENT, INC. AND 


QUANTUM CONSTRUCTION EQUIPMENT, LLC, APPELLANTS



V.



EAGLE-PICHER INDUSTRIES, INC., APPELLEE




_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-521-935; HONORABLE MACKEY HANCOCK, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellants Noble Construction Equipment, Inc. and Quantum Construction
Equipment, LLC perfected this appeal from the trial court's judgment in favor of appellee
Eagle-Picher Industries, Inc. Pending before this Court is appellants' unopposed motion
to dismiss this appeal by which they represent the parties have reached an agreement.

 Without passing on the merits of the case, pursuant to Rule 42.1(a)(1) of the Texas
Rules of Appellate Procedure we grant the motion and dismiss the appeal. Having
dismissed the appeal at the request of appellants no motion for rehearing will be
entertained and our mandate will issue forthwith.

 Don H. Reavis

 Justice

 



es New Roman">Procedural History

 Appellant was originally indicted by a Potter County grand jury on November 17,
1994, for the offense of aggravated sexual assault of a child under the age of 14 years. 
The case proceeded to trial under that indictment, and appellant was convicted with his
punishment being assessed at 65 years confinement in the TDCJ-ID. Upon appeal to this
court, the conviction was reversed and the cause remanded for new trial. See Hood v.
State, 944 S.W.2d 743 (Tex. App.-Amarillo 1997, no pet.). On June 25, 2002, (2) the State
obtained a re-indictment for the offense with the addition of two allegations concerning
appellant's previous convictions of felony offenses. If those additional allegations were
found to be true by the trial jury, as they were, the punishment ranges were increased from
a potential penal punishment for life or any term of not more than 99 years or less than five
years to penal confinement for life or for any term of not more than 99 years or less than
25 years. See Tex. Pen. Code Ann. §§12.32 and 12.42(d) (Vernon 2003 and Vernon
Supp. 2004). It is the addition of the allegations concerning appellant's prior convictions
that give rise to his claim of prosecutorial vindictiveness presented in his first point. 

Factual History

 The nature of appellant's challenges requires us to recount relevant portions of the
evidence. Lekelia Shaw, the complainant, testified that she was born on February 10,
1981. In mid-July 1994, she lived in a household consisting of herself, her mother Jamie
Shaw, her three-year-old brother Chad, her cousin Kristie Titus, and Kristie's friend
LaShawn Moore. Appellant was a friend of Kristie whom Lekelia met shortly after Kristie
moved into the Shaw residence. He became a daily visitor to the household.

 On the day of the occurrence, Lekelia said she was in her mother's room talking on
the telephone when appellant suddenly appeared and started fondling her breasts. Lekelia
told appellant to stop, told the person to whom she was talking on the telephone she would
call back, and hung up the telephone. She then went to her bedroom with appellant
following her. Appellant ordered her to remove her T-shirt and when she refused to do so,
he tore the shirt down the middle. He then pulled down her shorts, pulled his jeans and
undershorts to his knees, pushed her onto the bed, and as she tried to push him away, got
on top of her and sexually assaulted her.

 After the assault, she averred, appellant threatened to "whip her ass" if she told
anyone about the assault. He went to the living room, briefly tried to make conversation,
and left. Lekelia then threw her torn T-shirt into the dumpster, and took a prolonged bath
in which she stayed until her mother returned. She testified that appellant penetrated her
vagina and she was not married to him at the time.

 Lekelia admitted she did not report the occurrence until October 4, 1994; however,
she said, that delay was because she was afraid of her mother's reaction. On October 4,
1994, her mother and Kristie got into an argument about Lekelia wearing Kristie's clothes.
In the course of that argument, Kristie made a remark about Lekelia being fat, to which
Lekelia responded that Kristie's friend, appellant, apparently did not think she was fat
because he had raped her. Her mother then questioned Lekelia about the rape and
summoned the police. The police interviewed Lekelia, took a written statement from her,
and she underwent a sexual assault exam at the hospital.

 Lekelia admitted that she had possibly had a prior sexual experience with a 14-year-old-boy on St. Patrick's Day 1994. They were both naked and she believed they had sex
but "she didn't feel anything." She admitted that she had not told the police investigator
about that possible sexual encounter because her mother was present at the time and she
was afraid of her mother's reaction.

 Sexual assault nurse examiner Becky O'Neal testified that she performed a sexual
assault examination of Lekelia. She found two well-healed two millimeter tears to Lekelia's
hymen at the four o'clock and six o'clock positions which could have occurred as a result
of consensual or non-consensual sex. She could not determine when the tears occurred.

 Jamie Shaw, Lekelia's mother, testified that Lekelia stayed at home while Jamie
worked and Chad was placed in day care. She said the October 4, 1994 argument
between Lekelia and LaShawn was about clothes and she called the police as the result
of a statement made during the argument. She admitted that she had previously testified
that the argument between them was when she told LaShawn that she was going to have
to move out but, she averred, this argument occurred after the one over the clothes. Jamie
also testified that Lekelia's behavior changed after mid-July 1994. Lekelia had been out-going prior to that time but after the incident, she wanted to be alone and spent long
periods in the bathroom.

 Kristie Titus, who graduated from high school on June 1, 1996, testified that she had
lived with Jamie Shaw, who was her aunt. She said that LaShawn was her best friend. 
She averred that the October 4, 1994 argument was not about clothes because she could
not wear Lekelia's clothes. Rather, she said, the argument was the result of Kristie telling
Shaw that she and LaShawn saw Lekelia in a parked car possibly having sex. Shaw
began yelling at Lekelia, and Lekelia replied that she had not told her "about the time
[appellant] raped me." It was then that discussion of the incident with Lekelia was dropped
and their attention diverted to the sexual assault incident.

 Terry McCarthy, the safety director for Plains Transportation, testified that according
to their records, appellant was driving a truck between Weatherford, Oklahoma, and
Plainview and Amarillo until 4:45 p.m. on the date of the alleged occurrence. LaShawn
Moore averred that the October argument began because Kristie reported to Shaw that she
had seen Lekelia and a boy in a parked car with the windows steamed up. It was then that
Lekelia retorted that she "didn't say nothing when [appellant] raped [her]." Appellant took
the stand and testified that he did not rape Lekelia, fondle her breasts, have sexual contact 
with her, threaten her, throw her on the bed, or tear her clothing.

Discussion of Prosecutorial Vindictiveness Point

 The State initially responds to appellant's claim of prosecutorial vindictiveness by
arguing that the question was not properly preserved for our review. In doing so, it points
out that the procedural history of this case shows that appellant alternately opted between
representing himself and having counsel do so. The clerk's record reveals that appellant
had filed a pro se motion to quash the trial indictment because of prosecutorial
vindictiveness in including the prior conviction allegation. The record is not clear whether
the motion was filed at a time when appellant was representing himself or when he was
represented by counsel. However, in considering the motion, the trial court posited it was
filed at a time when appellant was not represented by counsel. The gist of the State's
argument is that there is no right to hybrid representation and once an appellant has
retained an attorney, the trial court is entitled to look solely to the attorney and is not
required to consider pro se motions. In advancing that proposition, appellant relies upon
the holdings in Ashcraft v. State, 900 S.W.2d 817, 831 (Tex. App.-Corpus Christi 1995,
pet. ref'd), and Busselman v. State, 713 S.W.2d 711, 714 (Tex. App.-Houston [1st Dist.]
1986, no pet.). 

 However, we believe the correct rationale in considering such matters is that applied
by the court in Meyer v. State, 27 S.W.3d 644 (Tex. App.-Waco, 2000, pet. ref'd). In that
case, the court opined that although a defendant does not have a right to hybrid
representation, in the exercise of its discretion, the trial court may allow him to do so. Id.
at 648. Thus, by considering and ruling upon a pro se motion, the trial court has essentially
allowed the defendant hybrid representation upon that one motion. Id. Therefore, when
the trial court did so, the motion that was filed pro se by the defendant was valid and as
effective as any other motion filed by an attorney. It is true that the trial court was not
required to consider the motion, but when it did so, its ruling became subject to review
upon appeal. Thus, even assuming arguendo that appellant was represented by counsel
at the time he filed his pro se motion, that fact would not change our ruling. We must,
therefore, consider the merits of this point. 

 The seminal case in the area of unconstitutional judicial vindictiveness was the
Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23
L.Ed.2d 656 (1969). In that case, reasoning that to hold otherwise might unconstitutionally
deter a defendant's exercise of his right to appeal or collaterally attack his first conviction,
the Court held vindictiveness against a defendant for having successfully challenged his
first conviction must play no part in the sentence he receives after a new trial. Id. 395 U.S.
at 725, 89 S.Ct. at 2080. 

 The leading case involving prosecutorial vindictiveness is Blackledge v. Perry, 417
U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In that case, the defendant was convicted
of a misdemeanor by a North Carolina state court. After he exercised his right to a trial de
novo in a higher court, the prosecutor obtained a superseding indictment charging the
defendant with a felony rather than a misdemeanor. Both the original misdemeanor
(assault with a deadly weapon) and the subsequent felony were based upon the same fight
between the defendant and a fellow prisoner. Considering these underlying facts, the
Court held that the Pearce principle applied to prosecutorial as well as judicial
vindictiveness and that it was not constitutionally permissible to respond to a defendant's
invocation of his right to appeal by bringing a more serious charge against him. Id. 417
U.S. at 28-29, 94 S.Ct. at 2103. 

 In Hardwick v. Doolittle, 558 F.2d 292, 302 (5th Cir. 1977), cert. denied, 434 U.S.
1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978), the court's discussion is helpful in considering
our case. As material here, in that case, the appellant and a co-defendant were originally
indicted on one count of armed robbery and one count of aggravated assault, and they
both were convicted. Upon appeal, appellant's conviction was reversed and the cause
remanded for retrial. Subsequent to the remand, the prosecutor obtained a superseding
indictment charging appellant alone with two counts of armed robbery and two counts of
aggravated assault. He was convicted on all counts. The issue of unconstitutional
prosecutorial vindictiveness in obtaining the second indictment was presented in the
appeal. In its opinion, the court had occasion to discuss and explicate the meaning of the
Blackledge reference to unconstitutional prosecutorial vindictiveness. In considering that
question, the court noted the collateral principle that there is a broad ambit to prosecutorial
discretion, most of which is not subject to judicial control. Id. at 301. In balancing the two
principles, the court opined that the teaching of the Blackledge decision in regard to
unconstitutional prosecutorial vindictiveness was that once a prosecutor exercises his
discretion to bring charges against a defendant, neither he nor his successor may increase
the number or severity of those charges in circumstances that suggest the increase was
made in retaliation for the defendant's invocation of statutory or constitutional rights. Id. 
However, it noted, a broad and uniform application of that principle would negate a
prosecutor's discretion in every case in which a defendant was initially indicted for less than
all the violations that his alleged spree of activity would permit. Therefore, the court
explicated that if a prosecutor can show he did not in fact act vindictively, a change would
not violate the Pearce principle. Id. at 302. The court did not discuss what type of proof
would suffice to demonstrate the absence of unconstitutional vindictiveness. In Alvarez
v. State, 536 S.W.2d 357 (Tex. Crim. App.), cert. denied, 429 U.S. 924, 97 S.Ct. 325, 50
L.Ed.2d 292 (1976), the court, in considering the question of prosecutorial vindictiveness, 
opined, "[v]indictiveness is the evil object of North Carolina v. Pearce, and it is equally
impermissible whether flowing from a judge or a prosecutor." Id. at 364. 

 The principle to be distilled from these cases is that in a cause in which a re-indictment is obtained after a reversal and remand, in order to avoid a Pearce problem, the
burden is upon the prosecutor to show that the re-indictment was obtained for some
reason other than prosecutorial vindictiveness. Whether the re-indictment was obtained
for some reason other than vindictiveness because of a successful appeal must, of
necessity, be determined on a case-by-case basis. 

 In addition to the cases we have discussed, in urging reversal is required, appellant
cites and relies upon the decision of the Court of Criminal Appeals in Bouie v. State, 565
S.W.2d 543 (Tex. Crim. App. 1978), and the rationale the court applied in Miracle v.
Estelle, 592 F.2d 1269 (5th Cir. 1979). In Bouie, the facts were somewhat similar to those
before us. The defendant was originally indicted for robbery by assault and a single prior
conviction alleged for enhancement. Bouie originally pled guilty and the State abandoned
the enhancement paragraph. On appeal, the conviction was reversed. The State then
obtained a new indictment which contained two enhancement paragraphs. The defendant
again entered a guilty plea and, at the trial level, unsuccessfully sought dismissal of the
enhancement allegations. There was nothing in the record showing any explanation by the
State for the addition of the two enhancement allegations. 

 In considering the question of prosecutorial vindictiveness, the court opined that in
view of the "absence of objective information about identifiable conduct by appellant
occurring after the first trial," "due process was violated by use of the enhancement
paragraphs" in the indictment to increase the potential punishment and remanded the
cause for a new punishment hearing. Bouie v. State, 565 S.W.2d at 547. By its comment,
the court significantly noted the absence of any attempt by the State to justify laying a basis
for increased punishment other than the appellant's appeal and reversal of the first
conviction.

 In Miracle v. Estelle, the State had secured from different grand juries two
indictments based upon the same conduct. One of those indictments was for robbery, with
one prior conviction alleged for enhancement, and the other was for aggravated robbery,
with two enhancement paragraphs. The defendant was originally convicted upon the
robbery indictment. After the first conviction was reversed on appeal, the State elected to
proceed under the aggravated robbery indictment. In considering the question of
vindictiveness, the court noted that by its action, the State had changed a prosecution that
called for a five year minimum punishment to one that would potentially result in a 15 year
minimum punishment. In considering this, the court held that because the State offered
no explanation for "upping the ante" against the defendant, the State could not re-indict
or re-try the defendant on the aggravated robbery charge. Miracle v. Estelle, 592 F.2d at
1277. However, on remand to the state court, the Court of Criminal Appeals refused to set
aside the second, more serious, aggravated robbery indictment because, it said, "[t]he
opinion in Miracle v. Estelle . . . is chock full of factual misstatements and some
misconceptions of the Texas substantive law applicable to the case before it." See Miracle
v. State, 604 S.W.2d 120, 125 (Tex. Crim. App. 1980.)

 We remain convinced that if the State can make some reasonable explanation for
re-indictment other than vindictiveness, the Pearce rationale is satisfied and reversal is not
required. For example, in Raetzsch v. State, 709 S.W.2d 39, 41 (Tex. App.-Corpus Christi
1986, pet. ref'd), the prosecutor explained that her failure to allege a prior conviction in an
earlier indictment that resulted in a reversed conviction was because of what she thought
was an inadequate pen packet and, by the time of a re-indictment, she had received a
proper pen packet. The court held that the presumption of vindictiveness need not be
applied in that case because "the circumstances of retrial were explained by the
prosecution and do not indicate to us vindictiveness." Id. at 41. 

 In this case, the prosecutor, who was not the prosecutor in the first indictment, gave
an uncontroverted explanation to the trial court that, as a result of her research and trial
preparation, she discovered that the intent had been to include the enhancement
paragraphs before and "it was an omission from the very first indictment and should have
been charged from the beginning." This explanation is similar to the one held sufficient in
the Raetzsch case. We cannot say that the trial court abused its discretion in deciding that
the explanation was sufficient to overcome any presumption of vindictiveness. Appellant's
first point is overruled.

 Reiterated, in appellant's second point he asserts the evidence is factually
insufficient to support the verdict. The standards by which we conduct our factual
sufficiency review are now so well established as to be axiomatic. Suffice it to say, our
task is to peruse the whole record and consider whether the overwhelming weight of the
evidence so contradicts the verdict as to make that verdict clearly wrong. Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Hall v. State, 970 S.W.2d 137, 140 (Tex.
App.-Amarillo 1998, pet. ref'd). In defining when the scale is tilted to the extent requiring
reversal, the Clewis court invoked such descriptive terms as "shocks the conscience" and
"clearly demonstrates bias." Clewis v. State, 922 S.W.2d at 135. In conducting our factual
review, it is also axiomatic that we defer to the jury's resolution of factual disputes. That
is, the power to reasonably infer facts from the evidence to resolve credibility issues and
determine what testimony is credible is not ours, but the jury's. Depauw v. State, 658
S.W.2d 628, 633-34 (Tex. App.-Amarillo 1983, pet. ref'd).

 To support his contention of factual insufficiency, appellant cites various instances
of inconsistencies in the victim's testimony at this trial and at the earlier trial some eight
years previously. He also cites the testimony of the safety director of Plains
Transportation, appellant's employer at the time, that driver's logs showed appellant was
out of town at the time of the incident and appellant's denial that the occurrence ever
happened.

 However, notwithstanding any inconsistencies that may have existed in her
testimony, the victim did not equivocate in testifying that appellant committed the offense,
and the physical evidence was consistent with her testimony, as was the testimony that her
mental condition (she became withdrawn) changed after the date of the occurrence. The
testimony of a victim, standing alone, even if the victim is a child, is sufficient to support a
conviction for sexual assault. Ruiz v. State, 891 S.W.2d 302, 304 (Tex. App.-San Antonio
1994, pet. ref'd); see and compare Blackmon v. State, 80 S.W.3d 103, 105-06 (Tex.
App.-Texarkana 2002, pet. ref'd) (evidence was sufficient notwithstanding the 12- year-old
victim made some inconsistent statements when she testified that the accused committed
the offense, her outcry substantially conformed to her testimony, and medical findings were
consistent with that testimony); Lange v. State, 57 S.W.3d 458, 461-65 (Tex. App.-Amarillo
2001, pet. ref'd) (evidence was sufficient despite delayed outcry, inconsistencies in the
victim's description of the incident, and some evidence of a motive for fabrication, when
medical evidence showed attenuation of her hymen consistent with the victim's testimony);
Orona v. State, 836 S.W.2d 319, 322 (Tex. App.-Austin 1992, no pet.) (although there
were some conflicts in the evidence, it was sufficient where the victim testified that the
accused penetrated her anus with his penis and a pediatrician testified about a fissure on
the victim's rectum consistent with penetration). Appellant's second point is overruled.

 In summary, both of appellant's points are overruled and the judgment of the trial
court is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004). 
2. Appellant was actually re-indicted on July 2, 1997, with the addition of the
punishment enhancing paragraphs. However, that indictment contained some technical
errors leading to the second re-indictment on June 25, 2002.